BAILEY & COMPANY *vs.* OGDEN *et al.*

1. If not absolutely required by the evidence, this verdict is in accordance with its decided weight.

2. There was no error in admitting in evidence the letters mentioned in the third ground of the motion for new trial; the plaintiffs' counsel, though objecting to them when first offered, whereupon the court ruled them out, did not, when offered a second time under new developments in the progress of the cause, renew the objection, but by his silence, if not by the language he used in relation thereto, acquiesced in, if he did not consent to, their admission.

3. There was no error in stopping counsel from commenting before the jury upon evidence that had been rejected upon their motion, and in checking them from drawing inferences from the same prejudicial to their opponents.

4. Where, after having fully charged the jury and submitted to them fairly all the law bearing on the issues int he cause, the court, at the request of claimants' counsel, gave them a further instruction upon a point already covered by the charge, and which, so far as it went, contained nothing objectionable, this, if error at all, might have been corrected on the spot by a request from the plaintiffs' counsel to make it fuller. He was present, and if he desired more specific instructions, he should have asked for them; and as this request would have been nothing more than was already given, it is only just to the court to presume that, had attention been called to the omission, there would have been a ready compliance with the request.

(*a.*) If the entire law claimed to apply to the question had been given
in immediate connection with the request, as might have been
proper, it does not appear that the result would have been affected
in this case.

Judgment affirmed.

December 15, 1885.

HALL, Justice.

[On December 3, 1881, an attachment in favor of John
T. Bailey & Company against Ogden Brothers, of Nashville,
Tennessee, was sued out and levied on certain land in Floyd
county, Georgia. A judgment in attachment was rendered,
execution issued, and was levied on the property on No-
vember 4, 1882, and Isabella and Louisa Ogden interposed
a claim thereto.

On the trial, the evidence for the plaintiffs was, in brief
as follows: A tenant under the defendants was in posses-
sion of the property until August, 1881, when he vacated
it. In the fall, one of the defendants was trying to rent it,
and shortly afterwards, a sign was put up that it was for rent
by the attorney now representing the claimants. The prop-
erty was conveyed by Printup Brothers & Company to A.
S. Ogden, one of the defendants, on July 2, 1878, for $3,000.
The claimants were sisters of the defendants, and were un-
married  A number of persons, who lived near them in Sid-
ney, Ohio, for a long time, testified that they had been inti-
mately associated with them; that the claimants had no
real estate there; that the witnesses had never heard them
speak of having property in Georgia, and that it was be-
lieved, or was said, that they were dependent for support
principally on their brothers. The business of defendants
in attachment was closed by levy on their stock on No-
vember 22, 1881. One witness testified that the father of
both defendants and claimants told him that he and his wife
were receiving interest on a note of $10,000 made by an-
other son, James G. Ogden, for a support, and that it arose
from property in which his wife was interested. Certain
notes, not material to be set out here, were introduced.

The evidence for the claimants was, in brief, as follows: Their father, in his lifetime, loaned $9,000, which was all he had, to the defendants in attachment, and they paid him interest. At his death in 1876, it became the property of the claimants, and the defendants borrowed it from them and gave them a note for it in that year. Interest was remitted to them regularly, and they lived on it. On November 14, A. S. Ogden, one of the defendants, made a deed to the claimants for the property in dispute to pay $3,000 of the debt, which was credited on the note. This had been agreed to about a year before, but A. S. Ogden had neglected to make the deed. No reservation of interest was made, and there was no intention to hinder, defraud or delay creditors, but it was a *bona fide* transaction. The business at Nashville was closed by a levy under an attachment on November 25 ; before that there had been no suits. The claimants knew nothing of the embarrassment or insolvency when the deed was taken. Letters from the father of the claimants to his son, A. S. Ogden, were introduced, showing the indebtedness to him and his receipt of interest prior to his death.

The property was found not subject. The plaintiffs moved for a new trial, on the following grounds:

(1), (2.) Because the verdict was contrary to law and evidence.

(3.) Because the court, during the concluding argument of counsel for the plaintiffs, allowed counsel for the claimants to read in evidence certain letters from P. A. Ogden, the father of the defendants and claimants, referring to the note held by him against them and acknowledging receipt of interest, when the same letters had been ruled out at a former stage of the trial. (The court added the following note:

"These letters were ruled out on the first day of the trial. But Mr. Hoskinson, plaintiffs' counsel, in the concluding argument, took the position that there had been no interest paid on the notes in evidence and argued to the jury that there were no entries on the notes

showing that any interest had been paid thereon after December 1, 1874. Mr. Hoskinson had beforehand in his argument claimed that the debt was a fixed-up thing and not genuine, and that the notes belonged to the old lady, Martha Ogden, and that at her death the interest stopped. Counsel for claimants then moved the court to admit the letters in evidence, in this view of this part of the case, to be considered by the jury, to show that P. A. Ogden had possession of the notes, and the court admitted them, no objection being made at the time to their admission. The court stated, if counsel for the plaintiffs relied on that position, the letters were admissible for this purpose. Mr. Hoskinson afterwards said in his argument to the jury that he didn't care about the admission of the letters in evidence; that they were of no consequence any way.")

(4.) Because, when counsel for plaintiffs in *fi. fa.* was making his concluding argument, commenting upon the law that, when a paper under which a party claimed rights was proved to exist and the same was not offered in evidence, the legal presumption was that it contained something adverse to the claimants' interest, the court stopped him, saying that all the evidence concerning a will in this case was ruled out on your motion, and unless you consent for that to go in, you are not authorized to discuss that question, and the jury cannot consider it, because there is no evidence that there was any will, all evidence in reference to a will having been ruled out on motion of plaintiffs' counsel.

(5.) Because, after the conclusion of the general charge, and before the jury had gone out, counsel for claimants made a suggestion to the court, which Mr. Hoskinson claims he did not hear, when the court said, " Yes, gentlemen, if you find that the claimants took the deed from Ogden without notice or knowledge of any intention on his part to hinder, delay or defraud his creditors," then they would be protected and the deed would be good, and refused to add, at the request of plaintiffs' counsel, that if they had reasonable grounds to suspect that the deed was made to hinder, delay or defraud creditors, then they would not be protected, and the deed would not be good, counsel for the plaintiffs, in their conduct of the case and

in their argument, having taken the position that the deed was made for the purpose of hindering, delaying and defrauding creditors, and that these claimants had reasonable ground to suspect such to be the fact. (The court added the following note:

"The fifth ground of the motion is modified as follows: 'Yes, gentlemen, if you believe Ogden owed the claimants the debt in controversy and made the deed to them to pay that debt, and that the claimants so intended to receive the deed, and yet that Ogden made the deed notwithstanding he owed the debt, with intent to hinder, delay or defraud his creditors, then, unless they had notice of such fraudulent intention on the part of Ogden at the time and before they accepted the deed, they would not be affected thereby, but would be protected in equity.' Counsel for plaintiffs claims that he requested the court to add, after the word, 'notice,' in this part of the charge, the words, 'or grounds for reasonable suspicion' that such intent was fraudulent. The court does not remember any such request, but certifies that these words were not embraced in these instructions last given, but also certifies that it gave, in the general charge, the second paragraph of section 1953 of the Code.)

The motion was overruled, and the plaintiffs excepted.]