SUMMERFORD *v.* DAVENPORT.

126    153
130    481

1. The facts of this case bring it within the rule that if one of two innocent persons must suffer by the act of a third person, he who put it within the power of such third person to do the wrongful act must suffer the loss, rather than the other innocent party who would be a victim without any fault on his part.
2. The evidence sought to be excluded tended both to sustain the plaintiff's claim and to disprove the defendant's contention, and was therefore admissible.
3. The refusal to exclude secondary evidence of a fact will not require the grant of a new trial, where the same fact is established by other competent evidence and there is no evidence impeaching its verity.

Submitted March 2, — Decided August 9, 1906.

Complaint. Before Judge Littlejohn. City court of Americus. July 8, 1905.

Suit was brought by James A. Davenport on a promissory note for $642.90, payable to the order of the maker, J. M. Summerford, and indorsed in blank by him and by L. K. Bagley. Summerford, who was named as the defendant, filed an answer in which he admitted the execution of the note, but denied liability thereon for the following reasons: Prior to the signing of this note, L. K. Bagley approached defendant and solicited an application for a policy of insurance, to be taken out in the Mutual Life Insurance Co. of New York, for the sum of ten thousand dollars. Defendant consented to make the application and was examined by the local physician of that company. Thereupon Bagley procured defendant to sign the promissory note sued on, which was to be accepted in payment of the first annual premium on the policy applied for, should it be issued, but if not, the note was to be surrendered to defendant. Shortly thereafter, Bagley notified the defendant that the insurance company had declined to issue the policy, and requested the defendant to make application to another company for a policy of ten thousand dollars. Defendant declined to do so, and asked Bagley to surrender his note. Bagley replied that he did

not then have the note, but promised to get the same and destroy it. Defendant subsequently agreed to 'undergo another examination and apply for a policy of three thousand dollars, and some time after he had been examined Bagley came to the defendant, while he was attending a camp-meeting in Dooly county, and handed him a large paper, saying there was his policy. Defendant asked if it was for only three thousand dollars; Bagley replied in the affirmative, and the defendant, having confidence in him, did not then and there examine the policy. At the same time the defendant asked Bagley where his note was, and Bagley replied that he had torn it up. A short time after Bagley left, defendant's wife examined the policy, which was one issued by the New York Life Insurance Company, and called his attention to the fact that it was written for ·the sum of ten thousand dollars. The defendant immediately, seeing that the policy was enclosed in an envelope containing the business card of Roney & Davenport, took the policy to the office of that firm in the city of Americus, where he found the plaintiff and explained to him the circumstances above related, told him he would not have the policy, and asked plaintiff for the note now sued on. Plaintiff said he had nothing to do with the insurance and knew nothing about the note, but supposed it was at headquarters. ·Defendant then and there gave notice of his defenses to the note and stated that he never expected to pay the same, and left the policy on the desk of the plaintiff.. The defendant further averred that the plaintiff was not an innocent purchaser or holder of the note, but prior to acquiring possession thereof had actual notice of defendant's defenses thereto; that the beneficial interest in the note was in the insurance company for which Bagley was acting as agent, and that company was seeking to collect the note through plaintiff; and that the fraud of Bagley in delivering the note to the New York Life Insurance Company, through which company the note came to plaintiff, was the fraud of the insurance company itself, because committed by its agent while conducting its business, of all of which the plaintiff had full knowledge before the note was delivered over to him.

The trial resulted in the direction of a verdict in favor of the plaintiff, and the defendant excepted.

*Williams & Harper,* for plaintiff in error.

*E. A. Hawkins,* contra.

Evans, J. (After stating the foregoing facts.)

1. The plaintiff submitted evidence to show that he was a local agent of the New York Life Insurance Company, and that Bagley, acting as an intermediary between defendant and the plaintiff, procured an application from the defendant, addressed to the New York Life Insurance Company, for a policy of ten thousand dollars, of a special kind; that the insurance company declined to issue a policy of the character applied for, but proposed to issue one of a different kind, provided the defendant would sign a certificate that there had been no material change in his health since his first application; that the defendant amended his original application by applying for another form of policy, signed the health certificate, and gave the note sued on for the premium, the policy being issued in the terms of the amended application and being delivered through Bagley to the insured. There was also evidence to the effect that upon closing the transaction by delivery of the policy, the plaintiff paid to Bagley $150 as his commission for effecting the insurance, indorsed the note, and sent it to the insurance company, which charged the note up against him on his general account with it. The note not being paid at maturity, the plaintiff became liable on his indorsement and the company returned the note to him. The premium on the policy was settled, so far as the defendant's liability to the company was concerned, and the note belongs to the plaintiff. The defendant testified that he never got the policy in the Mutual Life Insurance Company for which the note was given as a premium, because he was rejected by that company, and that immediately after discovering that the policy in the New York Life company had been issued for ten thousand dollars, he returned it to the plaintiff and told him he was ready to accept a policy for three thousand dollars, but would not keep the policy issued nor pay the note which he had given as a premium for the policy applied for in the Mutual Life Insurance Company. At the same time the defendant notified the plaintiff that he did not owe the note, because Bagley had promised to destroy it after he had been rejected by that company, and that the note had not been given for the premium on the policy issued by the company which was represented by the plaintiff. The defendant admitted that he had signed the original application for insurance in the New York Life company and also a subsequent application to that

company for a different kind of policy, and further admitted that on July 16, 1904, when the policy for ten thousand dollars was delivered to him by Bagley, he (the defendant) had signed the application then presented for his signature, as well as the health certificate. The defendant insisted, however, that he "never gave but one note for life insurance," and that was for the policy he was "turned down on;" and he further testified that he did not know anything about the New York Life company not granting the policy he had asked for because he did not come up to the standard, and that he did not get the policy he applied for. The written applications for insurance which were addressed to the New York Life company, and which the defendant admitted had been signed by him, all recited that the amount of insurance applied for was ten thousand dollars. The policy issued upon the last application was precisely such an one as that application called for, both as to the amount of insurance and the form of policy therein designated as that desired by the applicant.

So far as is disclosed by this record, Bagley, in the procurement of the first application for insurance made to the New York Life company by the defendant, acted only as an intermediary between the local agent of the insurance company and the applicant. Bagley submitted an application signed by the defendant for a policy which the company declined to issue. It sent to its local agent (the plaintiff) a different kind of policy, together with a blank application for that form of policy to be signed by the defendant in the event he should be willing to accept that form of policy instead of the kind of policy for which he had applied. The local agent entrusted this policy, the blank application, and a health certificate to be signed by the defendant, as well as a blank note to be given for the premium, to Bagley in order that he might submit to the defendant the company's counter-proposal, and, if it was accepted by him, procure the defendant's signature to the application, health certificate, and note for the premium, and deliver to him the policy called for by that application. Bagley returned to the plaintiff the application and health certificate, duly signed by the defendant, and also turned over to the plaintiff the note sued on. The defendant complains that the court refused to allow him to testify that after he was rejected by the Mutual Life Insurance Company, Bagley wanted him to take out a policy in another

company, and he agreed to take one for not over three thousand dollars; that when the policy for ten thousand dollars in the New York Life was delivered to him, he was at a camp-meeting, and Bagley came and turned over the policy with the statement that it was a three thousand dollar policy. For the purposes of this dis- cussion, we will consider the case as though the court had allowed this testimony.

There was nothing in the testimony to show any fraud that was perpetrated upon the defendant, of which he could complain as against the insurance company or its local agent. The defendant admits that he signed an application for a ten thousand dollar pol- icy in the New York Life, and does not pretend that anything was said or done by Bagley at the time of the signing of the applica- tion to prevent him from informing himself as to its contents. Adults in full possession of their faculties can not reply upon the representations of the adverse party or his agent that a written contract contemplated to be signed by him contains stipulations other than are therein expressed, as a ground for avoiding his con- tract. His duty is to read the contract; and if, instead of getting his information as to what the writing really contains by an exam- ination of it, he negligently relies upon the representation of the adverse party or his agent as to what it contains, the law will not relieve him of the consequences of his negligence in this respect. So, also, when the agent of the insurance company tendered to the defendant a policy with a statement that it was one of a different kind from that called for by the written application accompanying it, and he signed the application and accepted the policy without examination, he can not rely on this circumstance as an element of fraud in avoidance of his contract. If the policy delivered to him by the agent was of the kind specified in his contract, he would have been bound to accept the same, irrespective of any declaration which the agent may have made in regard to the same. So we con- clude that on the case as made, with the addition of the testimony rejected by the court, the defendant made no sufficient defense to show that he was not liable for the premium which was due upon the policy issued. We have in mind that the defendant in his plea of want of consideration contends that the note sued on did not represent the premium on the policy issued, but it was given for a premium on a policy in another company which was never

issued. We only advert to the fact that the defendant would be liable to the insurance company in the first instance for the premium on the policy issued, in determining the question whether or not the plaintiff was entitled to his commission. Now the defendant says that notwithstanding he negligently relied on the statement of Bagley that the note sued on had been destroyed, and did not require its return, still the plaintiff never became an innocent holder thereof, because Bagley acted as the agent of the insurance company in procuring the contract of insurance. The defendant put it within the power of Bagley to dispose of the note to an innocent purchaser; to float a negotiable paper which was not due. If Bagley took this note and gave it to Davenport, representing that it was for the premium on the policy issued, and on the faith of this representation the contract was treated as closed, and the plaintiff by indorsement became liable to the insurance company for the amount of its interest in this note, and paid out to Bagley his commission, relatively to the defendant the plaintiff would stand in the attitude of an innocent purchaser for value without notice of the fraud. It is a familiar rule that if one of two innocent parties must suffer by the act of a third party, he who put it within the power of such third party to do the wrongful act must suffer the loss, rather than the other innocent party who would be a victim without any fault on his own part. Nothing in the record indicates that the plaintiff had any notice that the note sued on was given in another transaction between the defendant and Bagley, or that its consideration was other than the delivery of the policy which was applied for. The amount of the premium due on the policy was identical with that named in the note. It is undisputed that before the plaintiff was informed of the defendant's contention that the note represented the consideration of another and distinct transaction, he indorsed it and became liable thereon to the insurance company and had paid Bagley his share of the commissions in the negotiation of the policy. Therefore the defendant is estopped from setting up this defense as against the plaintiff.

2. Complaint is made that the court erred in admitting in evidence the application to the New York Life Insurance Company, signed by the defendant, for a policy of ten thousand dollars, together with the medical examination of the physician made upon the faith of that application, and the amended application request-

ing a different kind of policy from that described in the first application, and the certificate signed by the defendant certifying that there had been no material change in his health since the making of the original application. These various documents were objected to on the ground of irrelevancy, because it was not shown that they had any connection whatever with the note sued on. They were admissible as tending to disprove the contention of the defendant that the note sued on was given in a separate and distinct transaction, and to sustain the contention of the plaintiff that the note was given for the premium on the policy issued upon the defendant's last written application for insurance. This evidence was further admissible as tending to show that even if the note was not given for that premium, he became liable for the premium by accepting the policy, and was, under the circumstances, estopped from setting up the defense of want of consideration in the note.

3. The plaintiff testified that the insurance company charged the note up to his account, which fact he knew only from written statements rendered him by the company. The court was asked to rule out the witness's statement that he was charged up with the note, because there was better evidence of the fact. Had the court done so, the plaintiff's case would not have been weakened by the exclusion of this immaterial evidence, nor would the defendant have been in any way benefited, since the court would still have been constrained to direct a verdict against him.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*