## HIXON *v.* THE STATE.

1. The admission of testimony as to the statements of a party other than the defendant, in a criminal case, over objection made on the ground that it was hearsay, was not error requiring a new trial, in view of the statement made by the court at the time, as to the purpose of its admission and the limitation of it by the court to such purpose, and in view of other testimony regarding such statements, by the witness giving the testimony and by the person whose sayings were testified to, going to and remaining before the jury without objection.

2. Any statement or conduct of a person which indicates a consciousness of his being guilty of a crime which has been committed, where at the time or thereafter he is charged with or suspected of the crime, is admissible as a circumstance against him, upon his trial for having committed it.

:3. Where a threat is made to kill some one, and the testimony indicates that the threat was directed against a person who was afterwards murdered, evidence of such threat is admissible against the person making it, upon his trial for such murder.

4. The evidence warranted the verdict, and no sufficient reason appears for disturbing the judgment overruling the motion for a new trial.

Submitted February 17,—Decided April 14, 1908.

Indictment for murder. Before Judge Freeman. Meriwether superior court. November 27, 1907.

Emmett Hixon was convicted of the murder of Joe Reynolds, and sentenced to life imprisonment. To the overruling of his motion for a new trial he excepted. The body of the deceased was found in Flint river on Saturday evening. He had been missing since the preceding Thursday. The river, at the places referred to in the evidence, constitutes the boundary line between Meriwether and Pike counties. Nannie Chunn was the only eyewitness sworn in behalf of the State. According to her testimony, on Thursday, July 4, 1907, she and the deceased were to go fishing together on this river. He went to the river ahead of her, and she joined him at a place where he had drawn from the water a bateau in which they were to go on the river, and close to which the two boat paddles were lying. While they were standing by this boat, the defendant came up and commenced a quarrel with the deceased, during which he picked up one of the boat paddles—about three feet long—and hit the deceased with it, saying to him at the time, "I am going to kill you, God damn you!" When the accused hit the deceased, the witness ran home, and she saw nothing further of what occurred. The accused came to her house

later in the day and told her she had better not tell what she saw at the river, or he would kill her, and that if he got in jail so he could not, his brother would. She testified regarding another conversation with the accused, on Thursday night immediately preceding his arrest on Friday, at which time he told her if he was arrested, for her not to swear it was he, but to lay the crime to Robert and Ben Tucker, and to swear that the deceased and the witness had their fishing poles across the river on the Pike side. This witness admitted that on the commitment trial of Robert and Ben Tucker, she swore that she saw these two approach the deceased while he was on the Pike side of the river, with sticks in their hands, and that she heard threats and blows. She said she so testified on the commitment trial because of the threat of the defendant that he or his brother would kill her if she told what she saw when the defendant struck the deceased. A physician testified, that a blow had been struck the deceased on each side of his head, the wound on the right side being about three inches wide and made with some flat instrument, such as a board or paddle, and that such blows were sufficient to produce concussion of the brain. The foregoing is the substance of the main testimony relied upon by the State for conviction. Such other testimony as is essential to an understanding of the errors assigned in the record is referred to in the opinion.

*W. R. Jones* and *Hill & Culpepper,* for plaintiff in error.

*John C. Hart, attorney-general,* and *J. R. Terrell, solicitor-general,* contra.

HOLDEN, J. (After stating the facts as above.)

Upon the trial of the case, the defendant's counsel objected to the following testimony of George Brown: "Two places were pointed out to me where he was struck, one on the Pike side above the bridge, I suppose 200 yards. There was a place where Nannie Chunn said it was over there. At the south of the branch, close to where she said Emmett killed Joe. Said where he was struck was close up there to the south of the branch, and the boat paddles were just across the branch, both of them. From the way she talked, it was between 30 and 50 yards." The objection was that this testimony was hearsay; and complaint is made that the court committed error in overruling this objection. Before George Brown delivered the testimony objected to, Nannie Chunn testified about

having made statements in George Brown's presence, and her testimony in regard to these statements was admitted without objection and remained before the jury. · The statements which she testified she made were not in detail exactly the same as the statements testified to by George Brown as having been made by her to him, but, in view of all the other testimony in the case, their meaning was substantially the same. The same is true of other testimony of George Brown as to statements made by Nannie Chunn, which was not objected to and remained before the jury. The statements made by Nannie Chunn, as detailed in this other testimony of George Brown, were not exactly the same as the statements embraced in his testimony objected to, but, in the light of all the testimony, had substantially the same meaning. No motion was made to rule out the testimony of Nannie Chunn, or this other testimony of George Brown; and in view of this testimony going to and remaining before the jury without objection, and in view of the further fact that at the time the testimony objected to was admitted, the court made the following statement, "I let it in only to locate how far the body was from some particular point; that evidence is not for the purpose of showing what the woman said was true," we do not think that the action of the court, in allowing the testimony to which objection was made to remain before the jury, was a sufficient ground upon which to set aside the verdict. *Payne* v. *Miller,* 89 *Ga.* 73 (14 S. E. 926); *Cox* v. *State,* 64 *Ga.* 374 (37 Am. R. 76); *Bailey* v. *Ogden,* 75 *Ga.* 874; *Lovett* v. *State,* 60 *Ga.* 257; *O'Shields* v. *State,* 55 *Ga.* 696; *Harrison* v. *State,* 125 *Ga.* 267 (53 S. E. 958); *Summerford* v. *Davenport,* 126 *Ga.* 153 (54 S. E. 1025); *Daughtry* v. *Savannah R. Co.,* 1 *Ga. App.* 393 (58 S. E. 230).

2. Complaint is made that the court committed error in allowing, over defendant's objections, the following testimony of George Brown: "He came to me and wanted to leave. He came to me two or three times. Wanted to leave. Wanted to run away from here. Of course he owed me money, and I told him, 'You stay on here. If you run off they will catch you if you done it, and if you didn't do it and run away, they will catch you.' He also wanted to leave again. He waked me up one morning, the morning they accused Ben Tucker of doing this act. He came to me and wanted to leave." This court has several times decided that

flight of the party suspected or charged with the commission of a crime may be admitted in evidence against him, upon his trial for the commission of such crime, and we see no reason why an expression of a desire to flee would not likewise be admissible. Any statement or conduct of a person, indicating a consciousness of guilt, where such person is, at the time or thereafter, charged with or suspected of the crime, is admissible against him upon his trial for committing it. *Whaley* v. *State,* 11 *Ga.* 123; *McRae* v. *State,* 71 *Ga.* 96; *Grant* v. *State,* 122 *Ga.* 740 (50 S. E. 946).

3. Error is assigned on the admission, over the defendant's objections, of the following testimony of a witness for the State: "Joe and Nannie was standing there at Carrie Brown's house talking, and Emmett walked up, and Joe says, 'Hush! don't say nothing. Don't you see that man walking around here with a pistol in his pocket?' Emmett walked across to Carrie Brown's house and says, 'Going to kill some damn son of a bitch before Christmas.'" Immediately preceding this testimony, the witness testified as follows: "I heard Emmett say the first of the year him and Joe had some few words." It does not appear from the testimony when the threat referred to was made, but, taking all of her testimony together, it would seem to indicate that the threat was made the first of the year; which would make the issuance of the threat several months prior to the commission of the homicide. If the threat was made, however, several months before the homicide, this fact would not make it inadmissible because of being remote in point of time. *Keener* v. *State,* 18 *Ga.* 194 (63 Am. D. 269) ; *Everett* v. *State,* 62 *Ga.* 65; *McDaniel* v. *State,* 100 *Ga.* 67 (27 S. E. 158) ; *Gordon* v. *State,* 125 *Ga.* 48 (53 S. E. 816). It does not clearly appear against whom the threat was uttered, but the testimony indicates that it was directed against Joe Reynolds, with whose murder the defendant is now charged. It does not appear that any one was present at the time the threat was made, except the witness Mary Harris, the deceased, the defendant, and Nannie Chunn; and there is evidence that the deceased and the defendant were both visiting Nannie Chunn. The threat was made just after Joe Reynolds made a remark which apparently referred to the defendant. There is nothing in the testimony to indicate that the threat was uttered against any person other than the deceased; and we think the testimony was clearly

admissible, to be given such weight and consideration as might be thought proper by the jury. *Harris* v. *State,* 109 *Ga.* 280 (34 S. E. 583); *Warrick* y. *State,* 125 *Ga.* 133 (53 S. E. 1027).

4. The evidence was sufficient to warrant the verdict, and the court did not abuse its discretion in refusing to grant a new trial. No good reason appears why the judgment overruling the motion for a new trial should be disturbed, and the judgment of the court below is                    *Affirmed. All the Justices concur.*