36786. FARRIS *v.* THE STATE.

DECIDED SEPTEMBER 12, 1957.

*J. Walter Owens, Jack M. Thornton, Ray & Owens,* for plaintiff in error.

*John H. Land, Solicitor-General,* contra.

CARLISLE, J. The defendant, Robert L. Farris, was indicted for the offense of cheating and swindling in that he by "deceitful means and artful practices obtained from Gerald Martin, eight and 10/100 dollars ($8.10) in lawful money . . . the property of said Gerald Martin under the following circumstances, to wit: (1) The said Gerald Martin, on said date, was the owner of a certain RCA Victor television set which he then and there delivered to the said accused for the purpose of obtaining from the said Robert L. Farris certain repairs thereon, for the reason that said television set was not properly playing and performing. (2) The said Robert L. Farris was then and there engaged in the business of repairing television sets and held himself out to the public as being engaged in such business; (3) The said accused accepted said television set from Gerald Martin for the purpose of making needed repairs thereon. (4) The said defendant then and there falsely represented to said Gerald Martin that said television set needed one 6AS5 tube, one 6x8 tube, one 6SN7 tube, one panel lamp and one @ 600 volt capacitor in order to restore the set to proper performance. (5) In truth and in fact, said television set did not need said items above described and the said Robert L. Farris fraudulently placed them in said television set for the purpose of making charges therefor and with the intent then and there to defraud the said Gerald Martin and, relying upon such false representations, the said Gerald Martin paid to said Robert L. Farris the sum of eight and 10/100 dollars ($8.10), whereby he was actually defrauded as aforesaid

by the said accused, contrary to the laws of said State, the good order, peace and dignity thereof."

A witness introduced on behalf of the State was identified as J. R. Martin, a sergeant 1st class with the military police, stationed at Fort Benning, Georgia. Assuming that this witness was the Gerald Martin referred to in the indictment (which fact certainly is not clearly shown by direct evidence in the record but there was no other witness named Martin placed on the stand) his testimony was wholly insufficient to prove the material allegations of the indictment with respect to the identity of the person defrauded, for he testified: "The television set that I delivered to Mr. Farris was not mine. I received the money to pay Mr. Farris at the Television Service Laboratory. It was given to me by three individuals. I don't know their names. It was not my television set and it was not my money that I paid Mr. Farris. I haven't lost any money and I haven't been defrauded out of any money, of any of my money."

"In an indictment for the offense of cheating and swindling by obtaining money through false and fraudulent statements and representations, the ownership of the money thus obtained and the name of the person cheated and defrauded should be stated; and the proof in support of these essential allegations must be in strict conformity therewith; otherwise the variance will be fatal." *O'Neal* v. *State,* 10 *Ga. App.* 474 (1) (73 S. E. 696). Furthermore, "It is essential to the legality of a conviction . . . [of a charge of cheating and swindling] that the person alleged to have been defrauded and cheated shall have sustained some pecuniary loss." *Ganey* v. *State,* 10 *Ga. App.* 777 (74 S. E. 286).

The evidence introduced by the State showed that a television set which was the property of a Major Garth, was thoroughly examined by one Harold C. Hogancamp at the request of a representative of the solicitor-general's office and was found to be "in perfect operating condition." Hogancamp, who qualified as a television technician, testified that he thereafter removed a 6 x 8 tube from the set and replaced it with a bad tube. This caused the picture to "move around and not stand still, but the sound was good." He next blew a fuse in the set, and this

caused the set to have no picture but left the sound all right.

After the television set was thus prepared, it was turned over to Sergeant Martin who delivered it to the defendant's shop to be repaired. Sergeant Martin testified that when he delivered it to the defendant he did not tell Mr. Farris what was wrong with the set, only that he wanted it repaired. Martin returned to the defendant's shop in about three days to pick up the set and the defendant gave him a bill for $18.73. The itemized bill which was introduced in evidence was as follows:

"Repairs to RCA television set

| | |
|---|---|
| "One 6AS7 tube | $ 2.15 |
| two 6X8 tubes | 5.60 |
| one 6SN7 tube | 2.30 |
| 1 panel lamp | .20 |
| 1 C100 capacitor | .65 |
| tax | .33 |
| shop labor charge | 7.50 |
| Total | $18.73 |

Paid, cash, Robert L. Farris."

It is the contention of the State that when the television set was delivered to the defendant all he had to do to put the set in perfect operating condition was to replace the bad 6 X 8 tube, which was of the value of $2.90, and the blown fuse, which was valued at 25c, in order to completely repair the set, and that it was unnecessary to remove the chassis from the cabinet in order to make these repairs. The evidence showed that the defendant had removed the chassis from the cabinet in order to replace the other items listed in the itemized bill. On cross-examination, Hogancamp admitted that while there is practically no deterioration of a television set, it is possible for parts to be in perfect working condition one moment and to go bad the next, and that "there is a good likelihood of television parts going bad after two days," and that, "in certain sections of the set it is possible that one bad part can cause other parts to go bad." The evidence showed that the defendant did not actually work on the set, but that a part-time employee by the name of Burns performed the repairs on the set after it was brought in by Sergeant Martin. Burns testified: "Sgt. Martin brought a television set in to

Teletron TV and said there was no light and no sound. I changed the high voltage fuse and that brought back the light but the picture was very distorted and out of sink and it was unstable. The condition of the picture was such that it could have been caused anywhere from the first RF amplifier clean to your video amplifier. There are more than four or five parts, at least 60 parts, which could cause the trouble I found in the picture.

"I started on the set after replacing the fuse by checking the RF amplifier, the RF oscillator and the sink tube which I replaced. The sink tube is the 6 X 8 tube. This cleared the picture up considerably but it still was jumpy and unstable. I then checked all of the rest of the tubes and they seemed to check out good. I also substituted tubes but there was no improvement in the picture.

"I then took the chassis out of the cabinet for the first time and used an oscilioscope. . . I took a diagram . . . at the shop and by use of my oscilioscope started tracing the trouble back to its source and finally found that the 6AS7 tube was gaseous and being gaseous it distorted the picture. This cleared up the picture considerably the picture becoming quiet stable. However, after it had played a few moments in the shop the picture would draw in at the sides. I took the oscilioscope and looked for further trouble. I then found a leaky condenser which I replaced. . .

"In working on the set I replaced the 6AS5 tube, put in two 6 X 8 tubes, one SN7 tube and one condenser. A condenser is a capacitor. In my opinion every part which I placed in the set was necessary to make the set function correctly. When a 6 X 8 tube and a fuse is defective it is not necessary to take the chassis from the cabinet to correct the trouble but I had to take the chassis out to find the trouble elsewhere.

"The bill for Sgt. Martin was made up by Mr. Farris after I had handed him the box of parts which I had removed from the set. He made the bill from the parts in this box.

"That capacitor there is the one I put in this TV set."

On cross-examination this witness testified as to his experience in electronics and as to his qualifications as a television repairman.

The solicitor-general argues in his brief that one of the items listed on the bill of materials submitted by the defendant was shown to be the original factory part still in the set at the time of the trial. However, we have carefully examined the record and the evidence with regard to this contention and do not find it substantiated thereby. Hogancamp testified with regard to this, that there is only one visible 1 600 volt capacitor in the set, and that the one that he could see was the original "factory type capacitor" which had not been replaced. He said "there is no other point one 600 volt capacitor." However, the only capacitor listed on the bill was a C 100 capacitor and nowhere in the testimony on behalf of the State or in the evidence introduced by the defendant is there any evidence that a 600 volt capacitor was claimed by the defendant to have been replaced or that the capacitor listed in the bill was the one testified about by witness Hogancamp. The evidence when viewed as a whole failed to prove that the defendant represented to Martin or to anyone else that he had replaced a part which he had not in fact replaced.

The proof of the corpus delicti, then, must rest on circumstantial evidence alone, and since the circumstances shown by the evidence are just as consistent with the honest (if mistaken) belief on the part of the defendant or his employee that the repairs to the television set which were made and the parts which were replaced were necessary, as with a fraudulent intent, the evidence does not exclude every other reasonable hypothesis save the guilt of the accused, and the verdict of guilty was not authorized. Code § 38-109. For all of the foregoing reasons the trial court erred in overruling the general grounds of the motion for new trial.

■ The first special ground of the motion for new trial complains because the trial court required the defendant's witnesses to be excluded from the courtroom while it permitted the State's witness, Hogancamp, to remain. The solicitor-general stated to the court that he needed the assistance of Mr. Hogancamp in the prosecution of the case since many of the questions involved were of a highly technical nature with which Mr. Hogancamp was familiar. The trial judge has a very wide discretion in excluding witnesses from the courtroom or in permitting them

to remain, and it is no abuse of his discretion or cause for reversal of a judge denying a new trial that at the request of the solicitor-general the trial judge permits a witness for the State to remain in the courtroom to assist in the prosecution of the case. *Thomas v. State*, 27 *Ga.* 287, 296 (9); *Cathey v. State*, 28 *Ga. App.* 666 (2) (112 S. E. 915). This is true even though such witness after testifying and then remaining in the courtroom and hearing the testimony of other witnesses is again introduced to testify in rebuttal. *Metropolitan Street R. Co. v. Johnson*, 90 *Ga.* 500 (4) (16 S. E. 49). See also *Keller v. State*, 102 *Ga.* 506 (1) (31 S. E. 92). This ground does not show error. We might say in connection with this ground, however, that we see no reason why the solicitor-general could not have secured the services of another television repairman to assist him in the examination of witnesses and the technical aspects of the case and thus have permitted the witness, Hogancamp, to be excluded along with the other witnesses.

■ On direct examination witness J. R. Martin testified that he went to Mr. Hogancamp's place of business and that he met a Mr. Stubbs and two or three television technicians there. The solicitor-general asked him, "What is Mr. Stubbs, do you know?" A. "I believe he works out of Mr. Land's office here." Counsel for the plaintiff objected to that and moved for a mistrial on the ground that they were putting the defendant's character in issue by innuendo when he had not so placed it, and that it was irrelevant and immaterial to the case. The contention of the plaintiff in error is that in having the witness state that Mr. Stubbs worked out of the solicitor-general's office, the inference was that the solicitor-general's office was investigating the defendant and, that they thereby stigmatized the defendant and intimated that he was a crook or a person of unsavory character. The second special ground of the motion for new trial assigns error on the refusal of the court to grant a mistrial for this reason.

While we recognize the rule that the State may not directly or indirectly place the defendant's character in issue unless the defendant has first done so, nevertheless, this ground of the motion does not show error. The entire course of the State's testimony showed from the start that the whole case resulted

from a plan evolved in the solicitor-general's office to entrap the defendant. If this particular testimony was subject to the vice complained of in this ground, so also was much of the other evidence introduced by the State which was not objected to by the defendant. *Simmons* v. *State,* 34 *Ga. App.* 163, 164 (1) (128 S. E. 690); *Hixon* v. *State,* 130 *Ga.* 479 (1), 480 (61 S. E. 14); *Cochran* v. *State,* 212 *Ga.* 245, 247 (3 e) (91 S. E. 2d 601).

■ ˙ The third and final ground of the motion for new trial assigns error on the refusal of the court to grant a mistrial because of certain allegedly improper argument on the part of the solicitor-general. The solicitor in his argument to the jury stated that he wanted to thank Mr. Hogancamp and the other television experts publicly for the fine cooperation which they had given his office "in bringing this man here before the bar of justice and I certainly hope that Mr. Owens' inferences and slurring remarks will not discourage them from cooperating with us in the future when we want them to perform a similar task." Counsel for the defendant objected to these statements by the solicitor-general on the ground that they were not founded on the evidence, were highly prejudicial to the defendant and were calculatedly made by the solicitor to prejudice the jury. Upon counsel making his objection known to the court, the court stated: "Mr. Land, I believe I will have you withdraw the statement relative to the appreciation to various television dealers. I do not believe that this is properly a part of the case. Gentlemen, you will ignore that. And just make deductions, Mr. Land, from the testimony and stick to the testimony." Thereafter, the solicitor continued his argument and stated: "That is the sole interest that Mr. Hogancamp has in this case, to cooperate with my office in this investigation." Counsel for the defendant again objected and again moved for a mistrial. As was observed by Judge Graham in *Georgia Power Co.* v. *Puckett,* 181 *Ga.* 386, 390 (182 S. E. 384), "Questions of alleged improper argument are often before the court. It may be observed that every case turns more or less on the circumstances peculiar to that case and that it is difficult to fix any inflexible rule for the argument other than that provided for in the rules of court." Generally, counsel should confine their argument to the law and the facts involved

in the case then before the court. Rule 19, Rules of the Superior Courts (Code, Ann., § 24-3319). If the statement of the solicitor can be said to have been argument, this court cannot say that it was not based on facts involved in the case and then before the court. While it was probably improper for the solicitor to thank the witnesses and may have been harmful or prejudicial to the defendant for him to do so in front of the jury, and while the trial court should perhaps have more strongly reprimanded the solicitor for thus arguing, when considered in the light of *all* the facts and circumstances it is apparent that the harmful effects of any such error were eliminated by the court's instruction to the jury to ignore the solicitor-general's statement. For this reason, this ground of the motion was properly overruled.

*Judgment reversed. Gardner, P. J., and Townsend, J., concur.*