30087. RINI v. THE STATE.

Hill, Justice.

The defendant, James Joseph Rini, alias Michael Joseph James, appeals from his conviction of murder and sentence to life imprisonment.

Essentially, he makes three arguments: (1) that the trial court erred in refusing to direct the prosecutor to produce statements of two witnesses for the state and in failing to perform an in camera inspection; (2) that the court erred in allowing defendant's character to be put in issue by admitting testimony as to the commission of criminal acts of sodomy unrelated to the murder for which he was being tried; and (3) that the court erred in allowing a detective who interrogated defendant to testify that defendant was "very evasive" and "would try to avoid my questions."

The deceased, Denny Abna, age 16, was found dead in Hall County on February 2, 1975. The cause of death was three .32 caliber gunshot wounds.

Defendant's commitment hearing was held on February 21, at which Gregory Dudley and a G. B. I. agent testified for the state.

Defendant made pre-trial motions for discovery of evidence, and to suppress evidence of sodomy and homosexual activity. The district attorney complied with some of the requested discovery but the trial court overruled the motion for discovery of statements by Gregory Dudley, James Claridy and other named and unnamed witnesses, and overruled defendant's motion that the court conduct an in camera inspection.

In response to the motion to suppress evidence of sodomy and homosexuality, the district attorney stated that he had stipulated with defense counsel ". . . that I will not ask any questions involving the subject matter, but I can't control the answers of any witnesses to his questions or to my questions." In view of this stipulation, the motion to suppress was overruled.

At trial, the defendant's roommate, Gregory Dudley, testified that he, the defendant and the deceased drove James Claridy's car from the defendant's College Park apartment to Hall County where he witnessed the defendant shoot the deceased three times.

James Claridy testified that he loaned his car to the defendant, that the defendant left with Dudley and the deceased while he stayed at the defendant's apartment, that when Dudley and the defendant returned the defendant told him that his (Claridy's) gun, a .32 caliber pistol, was in the trunk of the car, and that he then left town for several days and threw his gun in the Chattahoochee River upon his return.

On cross examination of Dudley and Claridy, defendant's counsel obtained their testimony that on February 18, 1975, they had told defense counsel that the defendant was at his apartment on the night in question (which was what defendant later testified when he took the stand). They testified that after talking to defense counsel, they decided to tell the truth to police. Defense counsel moved for production of Dudley's statement given to police in an effort to show that the statement was given to police prior to his statement to defendant's counsel, and for use in further cross examination. The motion was

overruled.

After the trial defendant made a motion for post-trial inspection of the statements of Dudley and Claridy, and investigative notes relating to those witnesses, and the district attorney's and other investigator's files relating to this case. By affidavit attached to that motion, defense counsel states that after the commitment hearing on February 21 and prior to trial, Dudley stated to him in a second interview that he had told investigating officers prior to the first interview with defense counsel that he saw the defendant shoot the deceased. The trial court declined to conduct a post-trial inspection of the district attorney's file and defendant's motion for post-trial inspection was overruled.

1. The defendant enumerates that it was error for the trial court to fail to perform an in camera inspection of the state's files and error to deny production of the statements of the state's two principal witnesses, Dudley and Claridy. In support of this argument, appellant cites Napue v. Illinois, 360 U. S. 264 (79 SC 1173, 3 LE2d 1217), Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215), Giles v. Maryland, 386 U. S. 66 (87 SC 793, 17 LE2d 737), and Giglio v. United States, 405 U. S. 150 (92 SC 763, 31 LE2d 104).

In Napue, it was held that the failure of the prosecution, absent any request by the defendant, to correct testimony known to be false, denied the defendant due process of law. In Napue, the prosecution's key witness, who identified the defendant as being a participant in a robbery-murder, testified falsely that no one had promised him a reduction in his own sentence in exchange for his testimony.

Giglio followed and reaffirmed Napue. In Giglio the government's case again depended on the testimony of a key witness. His credibility was an important issue. He testified falsely as to promises made in exchange for his testimony. The conviction was reversed and a new trial was ordered. However, the court added that a new trial would not be required where the newly disclosed evidence, although possibly useful to the defense, was not likely to have changed the verdict; i.e., the false testimony could not in any reasonable likelihood have affected the

decision of the jury.

Napue and Giglio both relate to convictions based upon testimony by key witnesses, which testimony was subsequently shown to have been false in part. These decisions thus deal with convictions based upon false testimony, as opposed to discovery in criminal cases. (These two subjects are related in that without discovery by some means the falsity of the testimony cannot be shown.)

In Brady, the court ruled that the failure of the prosecutor to produce evidence, upon request, favorable to the accused violates due process where such evidence is material to guilt or punishment, irrespective of the good or bad faith of the prosecutor. In Brady the defense requested and the prosecutor withheld a statement by a conspirator that it was he, the conspirator, who actually killed the deceased. As noted, Brady involves discovery as opposed to perjury.

In some cases, discovery and perjury may become mixed. See Giles v. Maryland, supra, which was remanded for further proceedings but in which there was no majority opinion. In Giles, a rape case defended on the basis of consent, the issue centered around the credibility of the victim, the key witness for the state on the issue of rape versus consent.

To these four decisions, a fifth should be added. Moore v. Illinois, 408 U. S. 786 (92 SC 2562, 33 LE2d 706), also involved alleged perjury and suppression (failure of prosecutor to permit discovery). There the court said (p. 795): "We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." However, the court said (p. 794): "The heart of the holding in Brady is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence."

It is from these five decisions that the proper result in this case must be found. Each of those decisions involved key witnesses for the prosecution, either conspirators, the

victim, or eyewitnesses to the crime, whose testimony established the defendant's guilt or described his particular conduct during the commission of the crime. Each of those cases also involved the credibility of those witnesses. Inspection of the statements of, and investigative reports of interviews with, those witnesses would not amount to a detailed disclosure of all police investigative work.

In the case before us, the key witnesses were Dudley and Claridy. The state's case depended upon their testimony. Their credibility was an important issue. If they testified falsely when they said that when they first spoke with defense counsel they had not then given the police statements incriminating the defendant, the jury was entitled to know it and Napue becomes applicable. As defense counsel has argued, the testimony shows that two people rode in Claridy's car with the victim on his last ride before he was killed with Claridy's pistol, and one person, either Claridy or the defendant, stayed at the defendant's apartment.

The state contends that defense counsel interviewed Dudley and Claridy prior to the commitment hearing, that Dudley testified against the defendant at the commitment hearing, and that the defendant thus knew that Dudley had changed his statement after the interview with defense counsel. However, if the sequence of events is as the defendant expects to show, that Dudley gave a statement to police implicating the defendant, that Dudley then told defense counsel that the defendant was at his apartment on the night in question, that Dudley then testified against the defendant at the commitment hearing and trial, then Dudley testified falsely at trial when he said that he had not given the police a statement incriminating the defendant prior to his interview with defense counsel.

Moreover, under this sequence of events, not only is Dudley's credibility in issue; his attempt to mislead defense counsel, if such occurred, could suggest personal animosity and ill will toward the defendant.

We find that the trial court erred in overruling the defendant's motion for production at trial of the statements of Dudley and Claridy. Under other cir-

cumstances this error conceivably could be cured by post-trial examination of these statements to determine the date or dates on which they were made. If they were made, as these witnesses testified, after the first interview with defense counsel, then no new trial would be required; here, however, a new trial is required for other reasons which follows.

2. On cross examination, witness King testified that the murder victim once beat him up and he left this state for three months to stay away from the victim. On redirect, the state sought to show that the reason he left the state was because the victim told the witness that if the witness didn't let the defendant commit sodomy that they (the victim, the defendant and Dudley) would "get" him (the witness). Thereafter, the state elicited testimony that the defendant had committed sodomy with this witness (the witness described these events in clear, nonlegal language). The testimony shows that the acts of sodomy occurred prior to the witness leaving the state. This testimony did not come spontaneously; it was extracted from an embarrassed witness.

By his pre-trial stipulation that he would not ask questions involving sodomy and homosexuality, the prosecutor conceded that those subjects were not relevant or material to the state's prosecution for murder. Yet, the state elicited testimony on those subjects to explain the witness' motive for leaving the state.

The state argues here that the testimony was admissible for the limited purpose of explaining the conduct of the witness. Yet, in closing argument, the defendant was identified three times as being a homosexual, and not any of these references was made in connection with explaining the witness' reasons for leaving the state.

Evidence of the commission of a crime other than the one charged is generally not admissible. *Cawthon v. State,* 119 Ga. 395 (4) (46 SE 897). There are exceptions to this rule but none of those exceptions is applicable here.

The trial court erred in allowing the defendant's character to be put in issue by testimony, some of it hearsay, as to the commission of prejudicial criminal acts unrelated to the murder for which the defendant was

being tried.

3. On direct examination by the state, a detective testified that he interviewed the defendant, advised him of his rights, and did not threaten or make any promise to him. After relating what the defendant said, the detective was permitted to testify that the defendant did not answer the questions directly, that he was "very evasive" and that "he would try to avoid my questions."

Any statement by a suspect given to an investigator, not amounting to a confession, could be considered evasive by the investigator. However, no decision has been cited holding that a law enforcement officer may testify as to his conclusions characterizing a defendant's statement as being evasive.

The state cites *Hixon v. State,* 130 Ga. 479 (2) (61 SE 14), for the proposition that "Any statement or conduct of a person which indicates a consciousness of his being guilty of a crime which has been committed, where at the time or thereafter he is charged with or suspected of the crime, is admissible as a circumstance against him, upon his trial for having committed it." In that case a witness was permitted to testify that the defendant "wanted to leave" (run away). It is clear that the witness was not testifying that the demeanor of the defendant showed that he wanted to flee, but that the defendant stated to the witness that he wanted to run away. That decision is not authority for the proposition that the witness could testify that he could tell from the way the defendant spoke that the defendant wanted to flee.

In *Thompkins v. State,* 222 Ga. 420 (2) (151 SE2d 153), it was held that when a prima facie case has been made that a confession was freely and voluntarily made, a witness could state that it was made voluntarily. It is one thing to testify as to facts showing the voluntariness of a confession and also testify to the conclusion that it was given voluntarily. The facts given in testimony support the conclusion. It is another thing, as here, to testify as to facts showing the voluntariness of a statement and then testify to the conclusion that the answers were evasive. The facts, as testified to here, do not support such a conclusion.

Although the jury may consider the witnesses'

manner of testifying in determining credibility (Code § 38-107), the credibility of witnesses is a matter to be determined by the jury under proper instructions from the court (Code § 38-1805). The credibility of the defendant's statement to police is to be determined by the jury, not by the opinion of it formed by police from the defendant's manner of responding to interrogation.

It is the rule in most jurisdictions that the results of a lie detector test are inadmissible in evidence for the purpose of establishing the guilt or innocence of one accused of a crime. The reason for the rule is that such tests are scientifically unreliable. *Stack v. State,* 234 Ga. 19, 21 (214 SE2d 514); *Salisbury v. State,* 221 Ga. 718 (4) (146 SE2d 776). In essence, these holdings are that the operator of a polygraph will not be permitted to testify as to his opinion that the defendant answered the questions truthfully or untruthfully. By the same token, an investigator should not be permitted to testify that in his opinion the defendant answered the questions untruthfully, or even evasively.

The trial court erred in overruling the defendant's objections to the testimony specified above.

*Judgment reversed. All the Justices concur, except Ingram, J., who concurs in the judgment only, and Undercofler, P. J., and Hall, J., who dissent.*

ARGUED JULY 7, 1975 — DECIDED SEPTEMBER 11, 1975.

*Telford, Stewart & Stephens, Charles W. Stephens,* for appellant.

*Jeff C. Wayne, District Attorney, Roland H. Stroberg, Assistant District Attorney, Arthur K. Bolton, Attorney General, John W. Dunsmore, Staff Assistant Attorney General,* for appellee.

UNDERCOFLER, Presiding Justice, dissenting.

1. Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) and related cases condemn the suppression of material evidence which is favorable to the accused. Essentially these cases require the prosecution, upon proper inquiry, to disclose such evidence to defense counsel. There is no issue of suppression when defense

counsel is cognizant of the evidence. Such is the case here. Defense counsel knew of the witnesses' contradictory statements before trial. As a matter of fact the contradictory statements were admitted by the witnesses at the trial. The prosecution did not suppress any material evidence favorable to the accused. So far as shown here the witnesses' alleged statements to the police are consistent with their testimony at the trial. I can find no error.

2. In my opinion King's testimony concerning the commission of sodomy with the defendant is not reversible error. The reason for King's leaving the state on one occasion was injected into the trial by defense counsel. Thereafter the prosecution was free to inquire into all the circumstances surrounding this incident.

3. A detective's testimony that the defendant was evasive in his answers during interrogation is not error. A witness may describe the demeanor of the defendant as he observes it.

I am authorized to state that Justice Hall joins in this dissent.