## S99A1433. HULLANDER v. THE STATE.
(522 SE2d 658)

CARLEY, Justice.

A jury found Scott Lee Hullander guilty of the following offenses: two counts of malice murder; two counts of armed robbery; two counts of possession of a firearm during the commission of a crime; and, one count of theft by taking. After entering judgments of conviction, the trial court imposed consecutive life sentences for the two murders and sentenced Hullander to varying terms of years for the remaining crimes. The trial court denied the motion for new trial, and Hullander appeals.[1]

1. Police discovered the bodies of Eugene Salinas and his uncle Richard Vidal in the home that they shared. Each died from a gunshot wound to the head fired at close range from a .25 caliber pistol. The victims' wallets and money were missing, as was Vidal's car. Officers did not find the murder weapon, but they did receive information that, on the night before the murders, the victims argued with Scott Hullander over a drug transaction. According to the informants, Hullander became enraged at the two and threatened to kill them. In the victims' house, the police discovered cigarette butts and a cigarette lighter bearing the inscription "Hull." DNA testing showed the presence of Hullander's saliva on one of the cigarette butts. Hullander informed the officers that he had no involvement in the crimes, but the State produced several witnesses who recounted the incriminating admissions he made to them. Although the State could not produce the actual murder weapon, the prosecutor did attempt to show through circumstantial evidence that Hullander had access to a Firearm Import Export (FIE) Titan .25 caliber semi-automatic pistol. An expert from the State Crime Lab testified that, in his opinion, the murder weapon was such a gun.

Based upon this evidence, a rational trier of fact was authorized to find proof beyond a reasonable doubt of Hullander's guilt for the malice murder of both victims and for the other offenses. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Prior to trial, the State provided the defense with a copy of a police report wherein one officer indicated that the State Crime Lab expert informed another officer that the bullets recovered from the crime scene were consistent with those fired from a .25 caliber pistol,

---

[1] The crimes occurred on January 12, 1997. The grand jury indicted Hullander on October 24, 1997. The jury returned its guilty verdicts on April 17, 1998 and, on that same day, the trial court entered the judgments of conviction and imposed the sentences. Hullander filed his motion for new trial on April 23, 1998, and the trial court denied that motion on April 20, 1999. On May 6, 1999, Hullander filed his notice of appeal and, on June 28, 1999, the case was docketed in this court. Hullander submitted his appeal for decision on August 23, 1999.

the brand of gun being either a FIE Raven or Phoenix. The prosecutor also made a pre-trial disclosure of the State Crime Lab's official reports identifying the bullets as having been fired from a FIE .25 caliber pistol. At trial, the State's expert testified that, in his opinion, the brand of gun used to kill the victims was a FIE Titan, not a FIE Raven or a Phoenix, .25 caliber pistol. When questioned about the apparent discrepancy between the opinion regarding the brand of the murder weapon attributed to him in the police report and that which he expressed at trial, the expert testified that the opinion he gave to the police officer was a preliminary one formed only after looking at the bullets and before actual scientific testing established that they were fired from a FIE Titan, rather than a FIE Raven or Phoenix, pistol. Despite this explanation, Hullander moved for a mistrial, claiming that the State's production of the expert's trial testimony was a surprise to the defense. He enumerates as error the denial of this motion for mistrial.

Any surprise occasioned by the expert's testimony does not require reversal of Hullander's convictions unless he had a right to earlier disclosure which the State violated. In this regard, the record shows that the prosecuting attorney timely provided Hullander with access to copies of the scientific reports in his possession, all of which identified the murder weapon as a FIE .25 caliber pistol. No official reports from the State Crime Lab ever identified the precise brand of FIE .25 caliber weapon used to kill the victims as a Titan or a Raven or a Phoenix. The expert testified that he never authored a report identifying the gun as a Titan. Therefore, there was no such report for the prosecution to provide to Hullander, and counsel for the State informed the trial court that he also was unaware until trial that the expert had formed any opinion regarding the pistol's precise brand. Hullander contends that the expert changed his opinion and that the State misled the defense into believing that, at trial, the expert would not identify the pistol as a Titan. However, the police report was not an official scientific report, but merely a recordation of what the officer recollected that yet another policeman told him that the expert had stated about the bullets. Thus, the record shows that, at his own risk, Hullander elected to rely upon the double hearsay statement in the police report as the expert's definitive opinion on the brand of gun used in the murders. To the extent that Hullander may have been confused regarding the expert's opinion, the confusion was self-induced and he had ample opportunity to conduct a thorough and sifting cross-examination. See *McKenzie v. State*, 271 Ga. 47, 49 (3) (518 SE2d 404) (1999); *Felder v. State*, 270 Ga. 641, 644 (6) (514 SE2d 416) (1999). Under these circumstances, the State fully complied with the mandate of OCGA § 17-16-4 (a) (4). *Cook v. State*, 270 Ga. 820, 831 (13) (514 SE2d 657) (1999).

Hullander further contends that the State should have disclosed the substance of its expert's testimony pursuant to the defense's *Brady* motion. *Brady* applies where the State suppresses evidence which is exculpatory of the defendant and material to his guilt or punishment. *Rini v. State*, 235 Ga. 60, 63 (1) (218 SE2d 811) (1975). There is no improper suppression of evidence where, as here, the record shows there was never any official report naming the precise brand of the weapon and, although that additional information was equally obtainable by the defense, the defendant simply failed to seek it. See *Rini v. State*, 236 Ga. 715, 718 (225 SE2d 234) (1976). Moreover, the expert's trial testimony was not exculpatory, since it is undisputed that the gun used in the murders was a FIE .25 caliber pistol and that a Titan is just such a firearm. Hullander contends that the testimony was impeaching of or inconsistent with the information contained in the police report. However, the expert explained that the earlier opinion attributed to him by the police officer was only a preliminary one. Because the expert's opinion as to the brand of the weapon was disclosed at trial, he was available for a thorough and sifting cross-examination concerning the apparent inconsistency between his testimony and the police report. There is no *"Brady* violation where information sought becomes available to the accused at trial. [Cit.] Appellant must show that earlier disclosure would have benefited the defense and that the delayed disclosure deprived him of a fair trial. [Cit.]" *Dennard v. State*, 263 Ga. 453, 454 (4) (435 SE2d 26) (1993). Hullander made no such showing. Since there was no *Brady* violation, the trial court correctly denied Hullander's motion for a mistrial.

*Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 18, 1999.

*Levinson & Paul, Christopher G. Paul,* for appellant.

*T. Joseph Campbell, District Attorney, Kelly F. Herron, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jeanne K. Strickland, Assistant Attorney General*, for appellee.