69935. MADDOX et al. v. THE STATE.
(330 SE2d 911)

CARLEY, Judge.

Appellants were jointly indicted and tried for armed robbery. The jury returned guilty verdicts and appellants appeal from the judgments of conviction and sentences entered thereon.

1. Appellants enumerate the general grounds, asserting that their motion for a directed verdict of acquittal was erroneously denied.

The relevant facts are as follows: Appellant Shields had just entered the store of Mr. Roy Adamson when the phone rang. Mr. Adamson, who had no employees, went to answer it. The phone was in Mr. Adamson's office in the back of the store. The office was equipped with a two-way mirror, allowing Mr. Adamson to see into the store. Initially, there was no one other than appellant Shields in the store. As Mr. Adamson spoke over the telephone, however, he observed ap-

pellant Maddox enter the store carrying a shotgun. Maddox went over to Shields, and Mr. Adamson saw that the two were acting jointly. At that point, Mr. Adamson also "realized . . . [he] might have a chance to get away." Without being seen by appellants, he successfully escaped through a back door of the store and ran to his nearby house. Mr. Adamson called the sheriff, armed himself, and then stood on the porch of his house. From that vantage point, appellant Maddox could be seen standing outside the store with "the shotgun in his hands, looking — as if looking for [Mr. Adamson], or where [he] had gone, or where [he] was coming from." Appellant Shields then exited the store carrying the cash drawer and other items. As appellants began to drive away, Mr. Adamson fired several shots at their car. Appellants sped from the scene, only to be apprehended a short time and distance away. Appellants contend that this evidence may have authorized a finding of their guilt of theft, but not of armed robbery.

OCGA § 16-8-41 (a) provides, in relevant part, that "[a] person commits the offense of armed robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." "This section clearly contemplates that the offensive weapon be used as a concomitant to a taking which involves the use of actual force or intimidation (constructive force) against another person." *Hicks v. State*, 232 Ga. 393, 403 (207 SE2d 30) (1974). " 'This accords with the general rule in the United States that the force or intimidation essential to robbery must either precede or be contemporaneous with, and not subsequent to, the taking.' " *Young v. State*, 251 Ga. 153, 157 (303 SE2d 431) (1983).

Citing *Hicks*, supra, appellants contend that the shotgun was not used by them as an offensive weapon in the taking of Mr. Adamson's property. "In *Hicks* the taking occurred *before* the victim woke up." (Emphasis supplied.) *Moore v. State*, 233 Ga. 861, 864 (213 SE2d 829) (1975). In direct contrast, Mr. Adamson, *after* observing the shotgun, was all too aware of what was *about to* transpire in his store and possibly to his person. Appellants assert, however, that the shotgun was never pointed directly at Mr. Adamson and that, since he escaped from the premises before the shotgun could be used as an offensive weapon in the actual taking, no armed robbery occurred. However, under OCGA § 16-8-41 an armed robbery is committed if the weapon has been used as an instrument of constructive, as well as actual, force. *Hicks v. State*, supra; *Moore v. State*, supra; *Young v. State*, supra. "When the Code speaks of *force*, it means *actual* violence; and when it speaks of intimidation, it still means force; not actual and direct, but exerted upon the person robbed, by operating upon his fears — the fear of injury to his person, or property, or character."

(Emphasis in original.) *Long v. State*, 12 Ga. 293, 315 (1852). There can be little doubt, and Mr. Adamson's testimony at trial confirms, that merely seeing a shotgun being carried into a place of business has an intimidating effect on the proprietor. The weapon had the desired forceful effect on Mr. Adamson in the commission of a theft from his business. "Without the force used by appellant[s] here, the taking from [Mr. Adamson] could not have been accomplished." *Moore v. State*, supra at 864.

Appellants also contend that the store property was not actually taken from "the immediate presence" of Mr. Adamson. "One's 'immediate presence' in this context stretches fairly far, and robbery convictions are usually upheld even out of the physical presence of the victim if what was taken was under his control or his responsibility and if he was not too far distant. . . . [P]erhaps the most pertinent Georgia case is *Clements v. State*, 84 Ga. 660 (11 SE 505) [(1890)] in which an armed robbery conviction was upheld where the victim was forcibly detained at his smokehouse while property was taken from his home some 15 feet away. . . . We think the language of the *Clements* decision plainly implies that a far greater distance than a mere 15 feet may be involved and robbery be sustained. . . ." *Welch v. State*, 235 Ga. 243, 245 (219 SE2d 151) (1975).

In the instant case, Mr. Adamson was forced to flee his store as the result of appellants' armed presence therein. He was also forced to remain on the porch of his house as the result of the shotgun carried by appellant Maddox. During the period that Mr. Adamson was in effect forcibly detained from returning to his store, appellants took items therefrom. The evidence clearly authorized a finding that appellants entered Mr. Adamson's store with the intent to commit a theft therein by use of an offensive weapon, with the result that Mr. Adamson was intimidated and fled and that the theft was then completed. The fortuitous escape of Mr. Adamson before he suffered the more direct physical threat of having the shotgun actually pointed directly at his person at the exact moment that the theft was carried out should not serve to absolve appellants from guilt for perpetrating what was an armed robbery of his store.

There was no error in denying appellants' motion for a directed verdict of acquittal.

2. Appellants assert their counsel was erroneously denied the right to open and conclude jury argument. The trial court ruled that this right had been waived when, after the State had rested its case, appellants called to the stand a witness who had previously testified for the State. See *Jefferson v. State*, 56 Ga. App. 383 (4) (192 SE 644) (1937). On appeal, appellants assert that they had called the witness merely for the purpose of completing cross-examination.

"[T]he defendant in a criminal case may under some circum-

stances recall to the stand a witness who has been introduced and has testified in behalf of the State, without forfeiting his right to conclude the argument; but to avoid a forfeiture of the right to conclude, he must distinctly inform the presiding judge as to the reason why he did not conclude his examination of the witness while the witness was on the stand. The court must have an opportunity of determining the validity of the reason given, and of ruling thereon." *Dunn v. State*, 18 Ga. App. 95, 99 (89 SE 170) (1916). When appellants called the witness in the instant case, their counsel did not inform the court that this was being done for the purpose of continued cross-examination. "Since it appears in the present case that the permission of the court to reintroduce the witness was not asked, and that the judge did not understand that his discretion was invoked, it is quite clear that there was no exercise of discretion on the part of the court, and, therefore, that when the [appellants] recalled [the witness] and elicited [testimony] from him . . ., the witness was called merely in the exercise of the [appellants'] right to introduce any competent witness [they] might see fit to introduce. . . . The trial judge therefore correctly ruled that the [appellants] had introduced testimony, and that the state was entitled to open and conclude the argument in the case." *Dunn v. State*, supra at 99-100.

3. Over objection, the State was allowed to introduce evidence concerning appellants' perpetration of an armed robbery of a store approximately two weeks before the incident at Mr. Adamson's place of business. The facts surrounding the previous crime were very similar to those which existed in this case.

The transcript demonstrates that appellants contended that their original entry into Mr. Adamson's store had not been for the purpose of robbing him, but merely to inquire whether he wished to purchase the shotgun, and that they only formed the intent to commit a theft therein after discovering that Mr. Adamson was not there to stop them. In view of this defensive contention, the evidence of the earlier crime was clearly admissible both to prove that appellants' intent was to commit an armed robbery and that their similar actions in Mr. Adamson's store evidenced their modus operandi in committing such a crime. See generally *Anthony v. State*, 160 Ga. App. 842 (287 SE2d 686) (1982); *Hood v. State*, 157 Ga. App. 282, 284 (4) (277 SE2d 261) (1981). "Having opened the door to this line of inquiry, there was no error in allowing the [S]tate to disprove it. [Cits.]" *Mason v. State*, 146 Ga. App. 675, 677 (247 SE2d 121) (1978). Appellants do not contend that any instruction as to the limited relevancy of the evidence was requested. "Failure to instruct on the limited purpose of evidence is not error absent a request. [Cit.]" *Lynch v. State*, 164 Ga. App. 317, 320 (296 SE2d 179) (1982).

4. Appellant Maddox asserts that his character was impermissi-

bly put into issue during his cross-examination and that the trial court erred in failing to grant his motion for mistrial.

Our review of the transcript demonstrates that the question asked of appellant Maddox on cross-examination related to a topic that he had first introduced in his direct examination. Compare *Brown v. State*, 118 Ga. App. 617 (165 SE2d 185) (1968). It was not the State's question but rather appellant Maddox's voluntary response thereto that revealed the fact of his previous incarceration. The State did not pursue this line of questioning. Under these circumstances, it was not error to deny the motion for mistrial or even to fail to give curative instructions to disregard the answer. Appellant Maddox's "reply opened the door for all evidence bearing on his character. [Cit.] No evidence of other crimes, however, was admitted." *Hudgins v. State*, 153 Ga. App. 603 (266 SE2d 284) (1980). See also *Holloway v. State*, 164 Ga. App. 589 (298 SE2d 296) (1982); *Harris v. State*, 168 Ga. App. 458, 459 (2) (309 SE2d 431) (1983); *Phillips v. State*, 171 Ga. App. 827 (321 SE2d 393) (1984).

5. Appellants contend that their cross-examination of Mr. Adamson was erroneously curtailed. The question which Mr. Adamson was not allowed to answer concerned appellants' activities in the store on the day of the crime. The transcript demonstrates that Mr. Adamson had already testified extensively as to those events, including the fact that appellants had not had the opportunity to point the shotgun directly at him and that he had fled the premises before the property was actually taken. "Where the same question has been asked and answered by a witness, the trial court does not unduly limit a defendant's right to a thorough and sifting cross-examination by refusing to allow it to be repeated again. [Cit.]" *Garrett v. State*, 141 Ga. App. 584, 585-586 (234 SE2d 161) (1977).

6. At the conclusion of the testimony of one of the State's witnesses, the District Attorney made the following comment to the witness in the presence of the jury: "Thank you for coming today, and I'm sorry about that death in your family." Appellants subsequently moved for a mistrial, asserting that the District Attorney's comment was calculated to elicit sympathy for the witness. Appellants' motion was denied and no curative instructions were given. Appellants enumerate as error the denial of their motion for mistrial.

The contested comment by the District Attorney did not purport to express the State's gratitude for the witness' cooperation in the *specific prosecution of appellants*. Compare *Farris v. State*, 96 Ga. App. 320, 327 (4) (99 SE2d 911) (1957). The trial court was authorized to find that the comment was no more than a mere polite expression of general appreciation to a witness, who had suffered a recent death in his family, for his appearance at the trial. "Side remarks, or 'side-bar' remarks, made by counsel during the trial of a case and in

the presence of the jury, are improper. But all improper conduct in the courtroom is not prejudicial or inflammatory as against the person on trial." *Bryant v. State*, 197 Ga. 641, 651 (30 SE2d 259) (1944)." [I]rregular comments of counsel during the course of trial will not be held by the reviewing court to be error, unless it is manifest that the trial judge abused his discretion, in not applying sufficiently drastic measures to enforce order, in a case where it is plain that the conduct or remarks of counsel cannot fail to be prejudicial." *Pelham & Havana R. Co. v. Elliott*, 11 Ga. App. 621, 626 (4) (75 SE 1062) (1912).

Although expressions of personal condolence should be made outside the courtroom, we do not believe that appellants could have been prejudiced by the comment here. The comment did not relate directly to the credibility of the witness' testimony, only to an extraneous circumstance in his personal life. Compare *Bryant v. State*, supra. Under the circumstances, we will not hold that it was a manifest abuse of discretion for the trial court to find that no drastic ameliorative measures were necessary. "The remark by the [District Attorney] which is the subject of this [enumeration] was more a breach of the decorum of the court than a violation of the rights of the accused." *Bryant v. State*, supra at 651.

7. Appellants' final enumeration is an assertion that the trial court erred in disallowing a certain question to be propounded to the prospective jurors during voir dire. The record before us contains no transcript of the voir dire.

"To raise an issue as to error in the conducting of the voir dire, objection must be made in the trial court to preserve the issue for appeal. [Cit.]" *State v. Graham*, 246 Ga. 341, 343 (271 SE2d 627) (1980). Appellants also have "the burden of showing error affirmatively by the record and since none appears there is no basis for reversal. [Cit.]" *Graham v. State*, 156 Ga. App. 538, 539 (275 SE2d 114) (1980).

*Judgments affirmed. Birdsong, P. J., and Sognier, J., concur.*

DECIDED APRIL 25, 1985 —
REHEARING DENIED MAY 8, 1985 —

*David C. Jones, Jr.*, for appellants.
*Timothy G. Madison, District Attorney, T. David Motes, Assistant District Attorney*, for appellee.