## A05A2128. JOYNER v. THE STATE.
(628 SE2d 186)

SMITH, Presiding Judge.

Levern Joyner was indicted by a Gwinnett County grand jury for armed robbery, obstructing a law enforcement officer, and giving a false name to a law enforcement officer. A jury found Joyner guilty, and his amended motion for new trial was denied. He now appeals to this court.[1] Finding no harmful error, we affirm.

1. Joyner asserts the general grounds with respect to his conviction for armed robbery, arguing that no evidence shows that he actually had a pistol when he confronted the convenience store clerk and demanded money, because the clerk never saw a gun. This argument is foreclosed by our decision in *Faulkner v. State,* 260 Ga. App. 794 (581 SE2d 365) (2003), in which the appellant similarly contended that the evidence was insufficient to support a conviction for armed robbery because he used a metal object concealed in a sock in his hand instead of a gun. We disagreed:

> A person commits armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon. The presence of an offensive weapon or an article having the appearance of one may be established by circumstantial evidence, and a conviction for armed robbery may be sustained even though the weapon or article used was neither seen nor accurately described by the victim. What is required is some physical manifestation of a weapon or some evidence from which the presence of a weapon may be inferred. Furthermore, the test is whether the defendant's acts created a reasonable apprehension on

---

[1] We remanded the case for resolution in the trial court of Joyner's counsel's second request to withdraw as counsel. That request was denied by the trial court on jurisdictional grounds, citing *Cox v. State,* 279 Ga. 223, 224 (1) (610 SE2d 521) (2005), and the appeal was returned to this court.

the part of the victim that an offensive weapon was being used, regardless of whether the victim actually saw the weapon.

(Citations, punctuation and footnotes omitted.) Id. at 795. Here, the victim testified through an interpreter[2] that she believed Joyner had a gun because of the way he held his hand inside his jacket, which she demonstrated for the jury. She was frightened because she believed he might have a gun, and gave him the drawer from the cash register. A toy gun was found in Joyner's waistband when he was arrested shortly afterward near the scene of the crime.

> [T]he evidence authorized a finding that he used an article that had the appearance of a gun to persuade her to comply with his demand and that his acts created a reasonable apprehension on her part that he was threatening her with a gun. Accordingly, the evidence was sufficient to support [the] conviction for armed robbery under the standard set forth in *Jackson v. Virginia.*

(Citations and footnotes omitted.) Id.

2. Joyner contends he was denied due process because an accurate recording of his commitment hearing was not made or provided to him before trial. Uniform Superior Court Rule 26.2 (A) provides in pertinent part:

> At the commitment hearing by the court of inquiry, the judicial officer shall perform the following duties: . . .

> Cause an accurate record to be made of the testimony and proceeding by any reliable method. . . . A copy of the record of any testimony and the proceedings of the first appearance and the commitment hearing shall be provided to the proper prosecuting officer and to the accused upon payment of the reasonable cost for preparation of the record.

Joyner's standby counsel discovered as trial began that, through some oversight or equipment malfunction, the preliminary hearing was not recorded by the magistrate's court or the recording could not be located. Joyner then moved to dismiss because, he claimed, he could have impeached one of the police officers with inconsistent

---

[2] The victim is Ethiopian and speaks Amharic.

testimony given at that hearing. According to Joyner, that officer testified that the toy gun was not found in his waistband at the time of his arrest.

But "failure to provide defendant with a transcript of the preliminary hearing in order for him to use same to attack the testimony given against him or for same to be used for impeachment purposes did not require reversal of his conviction of burglary." (Punctuation omitted.) *Robinson v. State*, 182 Ga. App. 423, 424 (1) (a) (356 SE2d 55) (1987) (citing *Harper v. State*, 170 Ga. App. 601, 603 (4) (317 SE2d 567) (1984)). Joyner relies on *Barnes v. State*, 184 Ga. App. 513, 513-514 (2) (361 SE2d 876) (1987) (full concurrence in Division 2), to argue that the complete absence of a transcript mandates reversal. In *Barnes*, an apparent equipment malfunction caused only a partial transcript to be available, but it does not appear that the appellant intended to use the transcript for impeachment purposes. Here, although the transcript appears to be completely unavailable, Joyner has not shown that the failure of the "judicial officer" or an employee of that officer to record the hearing is attributable to the State in any way, or that such a failure falls outside the general rule stated in *Robinson*, supra, that failure to provide a preliminary hearing transcript for impeachment purposes will not require reversal of a subsequent conviction. Moreover, even if Joyner could have successfully impeached the police officer, as he contends, the remaining evidence in the case was ample to support his conviction. See Division 3, below. Joyner therefore has failed to demonstrate reversible error from the record.

3. Joyner contends the trial court erred in instructing the jury that it could consider an eyewitness's "level of certainty" in assessing the reliability of an identification. The trial court gave the then current pattern charge, Council of Superior Court Judges, Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.35.10 (3rd ed. 2003), which, however, was later disapproved by the Georgia Supreme Court in *Brodes v. State*, 279 Ga. 435 (614 SE2d 766) (2005). In *Brodes*, the Supreme Court reversed the conviction on the basis of that portion of the charge, concluding that under the circumstances of the case it was harmful error. Id. at 442. However, "the only evidence connecting Brodes to the crimes was the eyewitness identification of him by the two victims, one of whom was unable to pick Brodes' photo in a photo array, and the other of whom was able to describe to police the weapon used in the crimes but was unable to give any physical characteristics of the perpetrator." Id. Similarly, in *Brown v. State*, 277 Ga. App. 396 (626 SE2d 596) (2006), we reversed because "the only evidence linking Brown to the crime was the victim's identification testimony." Id. at 397.

In contrast, the victim here gave a detailed description of the perpetrator, including the clothing he was wearing. Within the hour, a man matching the description and wearing the described clothing was seen nearby. He emerged from some bushes beside a business and fled upon seeing one of the officers. Several officers joined in the chase, but Joyner refused to stop even when ordered to do so at gunpoint. While fleeing, he reached repeatedly in a threatening manner toward the waistband of his pants, and after his capture officers found a toy pistol concealed in his waistband. He also gave a false name to the officers. In addition, Joyner admitted at trial that he was present at the convenience store, although he denied committing the robbery. Finally, Joyner's wife called the police two days after the robbery to report that she had found a large amount of cash in Joyner's car. The car was parked in a Wal-Mart parking lot immediately behind the business where one of the officers spotted Joyner before he fled. In light of all the evidence connecting Joyner with the crime apart from the eyewitness identification, we conclude that the "level of certainty" portion of the trial court's charge "was harmless because it is highly probable that the error did not contribute to the judgment." (Citation and punctuation omitted.) *Dunson v. State*, 275 Ga. App. 515, 517 (2) (621 SE2d 525) (2005).

4. In Joyner's remaining enumerations of error, he contends the trial court erred in dealing with Joyner's attempts to represent himself and the appointment and removal of Joyner's various trial counsel. It appears, however, that these difficulties were self-induced, and we find no error.

(a) Joyner complains that the trial court erred in finding that he waived his right to trial counsel.

> The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. . . . [T]he trial judge has the responsibility of determining whether the accused has intelligently waived his right to counsel. The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused — whose life or liberty is at stake — is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused.

(Citations and punctuation omitted.) *Clarke v. Zant*, 247 Ga. 194, 196 (275 SE2d 49) (1981). Generally, in order to validly waive the right to

counsel, the defendant should understand: (1) the nature of the charges; (2) any statutory lesser included offenses; (3) the range of possible punishments, including a jail sentence; (4) possible defenses; (5) mitigating circumstances; (6) that the rules of evidence will be enforced against him; (7) that he must make strategic decisions about testifying, calling witnesses, conducting voir dire, and striking jurors; and (8) that issues must be preserved and transcribed in order to make them on appeal. *Bush v. State*, 268 Ga. App. 200, 202 (2) (601 SE2d 511) (2004). It is not necessary, however, for the trial court to make each and every one of these inquiries. "The record need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver." (Citations and punctuation omitted.) *Jones v. State*, 272 Ga. 884, 886 (2) (536 SE2d 511) (2000).

Here, Joyner indicated his desire to represent himself as early as May 2003, when he indicated that intention in his application for appointed counsel. In September, he wrote a letter to the trial court demanding his "constitutional right to self representation" and filed a "Motion for Self Representation." In November, his counsel filed a request to withdraw as attorney of record, stating that Joyner "does not wish for me to represent him in this case. He feels that he is able to do a better job by representing himself in this matter." He also noted that Joyner had filed a bar complaint against him.

At the hearing on the motion to withdraw, in November, the prosecutor noted that Joyner's counsel had been made standby counsel and Joyner "was allowed to represent himself." The trial court indicated that it had already discussed with Joyner the perils of self-representation and noted that "before we go to trial, the Court will readvise you of the warnings involved when you wish to elect to represent yourself, and I assume thus far as today's decision you still wish to represent yourself from this point forward." Joyner responded, "Yes."

Joyner's case was reached for trial in January 2004, and at a pretrial hearing the trial court reviewed in detail "what is involved when you do reject or waive counsel." The trial court explicitly informed Joyner of the charges against him, the potential penalties upon conviction, his right to present possible defenses and mitigating evidence, his right to request a charge on lesser included offenses, that he would be held to the same legal standard with regard to the rules of evidence and the presentation of his case, that he must preserve issues for appeal, and that he must conduct voir dire and examine witnesses and present evidence "on [his] own." Joyner is a college graduate who was formerly employed as a police officer, had testified as a law enforcement officer in court, and had represented

himself in another legal matter. Joyner affirmed that his decision was "made freely and voluntarily" and "knowingly and intelligently."

Having discussed all these matters with Joyner, the trial court found, "[f]or the record, I'm satisfied that Mr. Joyner thus far is making a valid decision to represent himself and in so doing, I'm relying on established case law." This was not error. "The record shows with convincing clarity that the defendant knowingly, understandingly and voluntarily waived the right of representation by counsel." (Citations and punctuation omitted.) *Williams v. State*, 192 Ga. App. 317, 318 (2) (384 SE2d 877) (1989).

(b) Joyner also contends the trial court erred in denying his motion for mistrial after "standby" counsel was appointed to represent him during the trial. During trial, Joyner decided that he no longer wished to represent himself and asked the judge to designate standby counsel to represent him for the remainder of the trial. As soon as he was appointed, counsel moved for a mistrial on the ground that he was unprepared for trial, and the trial court denied the motion but took a recess in order to allow counsel to speak with the witnesses and make "additional preparations." Counsel declared after the recess that he was ready to proceed.

Joyner argues that counsel had insufficient time to prepare the case, and that this is grounds for a mistrial. But "[t]he standard of review for the trial court's refusal to grant a mistrial is abuse of discretion. [Cit.]" *Johnson v. State*, 268 Ga. App. 426, 427 (1) (602 SE2d 177) (2004). As noted repeatedly by the trial court during the colloquy with standby counsel, that lawyer's lack of preparation was entirely due to Joyner's insistence on representing himself and then changing his mind mid-trial. He had been present as standby counsel and was familiar with the case, and the trial court declared a recess and offered him the opportunity to interview witnesses and prepare, after which counsel stated that he was ready to proceed. Under these circumstances, we cannot say that the trial court abused its discretion in denying Joyner's motion for mistrial.

(c) Joyner, citing no legal authority whatsoever, complains that the trial court erred in denying his appellate counsel's two requests to withdraw. But the trial court's decision to require Joyner to proceed with appointed counsel is reviewed on an abuse of discretion basis. *Spencer v. State*, 176 Ga. App. 313, 314 (335 SE2d 661) (1985). Joyner is, in effect, arguing both that he should not be represented by counsel and that he should have been represented by counsel. In light of his repeated, confusing, and inconsistent decisions regarding whether he wished to represent himself or not throughout the course of this litigation, we cannot say that the trial court abused its discretion in refusing to allow yet another attorney to withdraw from representation of Joyner.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED MARCH 7, 2006 —

*Glynn R. Stepp*, for appellant.
*Daniel J. Porter, District Attorney, David B. Fife, Assistant District Attorney*, for appellee.