A06A1651. FLUELLEN v. THE STATE.
(644 SE2d 486)

SMITH, Presiding Judge.

A jury found Zantavious Fluellen guilty of armed robbery. In his sole enumeration of error on appeal, Fluellen contends that the trial court erred in failing to direct a verdict of acquittal. We find that sufficient evidence supports his conviction and affirm.

In reviewing the denial of a directed verdict of acquittal, we employ the same test used to determine sufficiency of the evidence. See *Joyner v. State*, 280 Ga. 37, 38 (1) (622 SE2d 319) (2005). "Under that standard, this Court reviews the evidence in a light most favorable to the verdict and defers to the jury's assessment of the weight and credibility of the evidence." (Citation omitted.) Id. at 38-39 (1). "As long as there is some competent evidence, even though contradicted, to support each fact necessary to [prove] the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Ayoluwa v. State*, 271 Ga. App. 424, 425 (1) (609 SE2d 749) (2005).

Viewed in this manner, the evidence shows that on July 3, 2002, Brendan Creegan worked as a delivery driver for a restaurant, and he

was dispatched to deliver a food order to a nonexistent address. When Creegan was unable to locate the address, he was approached by a man subsequently identified as Fluellen. According to Creegan, Fluellen indicated that he had placed the order, but that he did not have money with him. Creegan exited the car and walked with Fluellen toward the house. At the time, Creegan had both the food order and a money bag, which contained approximately $300.

A second individual — who was never identified — grabbed Creegan from behind, sprayed him in his face with caustic oven cleaner, took the money bag, and fled. Fluellen then told Creegan "that they were just playing around[,]" and he demanded that Creegan give him the food. Creegan testified that he refused, and Fluellen then "reached under his shirt and said that he had a gun. He said that he had a bunch of friends out in the woods; and if I was going to do anything, that he would have them come out." When Creegan was asked by the prosecutor what he thought they might do, Creegan responded, "I guess beat me up." According to Creegan, Fluellen was wearing a t-shirt and although Creegan could see the bulge of Fluellen's hand under the shirt, he did not see the bulge of a weapon. Creegan turned and began walking toward his car without giving Fluellen the food. Fluellen then followed Creegan and snatched the bag of food from him, ripping the bag and causing the food to fall to the ground. Fluellen picked up the food and left. Based upon this and other evidence, the jury found Fluellen guilty of armed robbery.

The indictment alleged that Fluellen committed the offense of armed robbery by "unlawfully then and there with intent to commit theft, . . . tak[ing] from the person of Brendan Creegan and immediate presence of Brendan Creegan, certain property . . . by the use of a handgun, an offensive weapon." Fluellen asserts on appeal that his conviction must be reversed because the State presented insufficient evidence of the presence of a gun.

"A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon." OCGA § 16-8-41 (a). As we have held, "[t]he presence of an offensive weapon or an article having the appearance of one may be established by circumstantial evidence, and a conviction for armed robbery may be sustained even though the weapon or article used was neither seen nor accurately described by the victim." (Citation omitted.) *Joyner v. State*, 278 Ga. App. 60 (1) (628 SE2d 186) (2006). However, a conviction may not be sustained absent "some physical manifestation of a weapon or some evidence from which the presence of a weapon may be inferred." (Citation omitted.) Id. When no weapon has been seen, "the test is whether the defendant's acts created a

reasonable apprehension on the part of the victim that an offensive weapon was being used." (Citation omitted.) Id. at 60-61 (1).

The requisite "reasonable apprehension" should not be equated with subjective fear on the part of the victim. *Lemming v. State*, 272 Ga. App. 122, 124 (1) (612 SE2d 495) (2005). While fear is one meaning of "apprehension," it also means "the faculty of grasping with the intellect," and "[s]ynonyms of apprehension include intellection and perception." (Citation, punctuation and footnote omitted.) Id. Accordingly, we have found reasonable apprehension in aggravated assault cases in the absence of testimony from the victim,[1] and even when the victim affirmatively testifies that she was not afraid.[2]

Applying the appropriate definition of "reasonable apprehension" to the evidence presented demonstrates that sufficient evidence supports the jury's finding of a reasonable apprehension on the part of the victim that an offensive weapon was being used.[3] The defendant told the victim "I've got a gun." This admission was direct evidence of the presence of a gun. See OCGA § 24-1-1 (3) (" 'Direct evidence' means evidence which immediately points to the question at issue."); *Avera v. State*, 228 Ga. 571, 573 (186 SE2d 867) (1972) (defendant's admission "to the effect that he had shot the deceased was direct evidence of the fact") (citations omitted); *Barrino v. State*, 282 Ga. App. 496, 498 (1) (639 SE2d 489) (2006) (defendant's admission that he owned bag of pills was direct evidence of possession).

The fact that the victim walked away after Fluellen threatened him with a gun does not necessarily mean that he did not apprehend — meaning perceive — that a gun was present. People under stress can react in a variety of ways, and the victim's conduct in walking away was not inconsistent with the presence of a weapon. Some people might believe that sudden movement could provoke a robber into using his weapon and choose instead to attempt an escape by calmly walking away. Furthermore, in light of the direct evidence provided by the defendant's admission that he had a gun, the inference to be drawn from the victim's conduct in walking away was for the jury to determine.

Sufficient evidence also exists to support the "by use" element of armed robbery. "The force or intimidation essential to robbery must either precede or be contemporaneous with, and not subsequent to, the taking. A relatively brief period of time between the use of the

---

[1] See *Anthony v. State*, 276 Ga. App. 107, 108 (1) (622 SE2d 450) (2005).

[2] *Lunsford v. State*, 260 Ga. App. 818, 821 (2) (581 SE2d 638) (2003) (victim testified that she was "never at any point afraid of him. . . . I just knew he wouldn't hurt me.") (punctuation omitted).

[3] The record shows that the jury was charged on reasonable apprehension on the part of the victim that an offensive weapon was being used.

offensive weapon and the actual theft does not sever the connection between the two acts." (Citations and punctuation omitted.) *Wynn v. State*, 228 Ga. App. 124, 125-126 (1) (491 SE2d 149) (1997). Even if there was no evidence that the defendant used a weapon at the time of the taking, evidence of the presence of a weapon prior to that taking "satisfies the statutory requirement that the taking be by use of an offensive weapon." *Ramey v. State*, 206 Ga. App. 308, 309 (425 SE2d 385) (1992).

In this case, Fluellen's admission that he had a gun shortly before forcibly taking food from the victim provides a sufficient "connection between the two acts." (Citation and punctuation omitted.) *Wynn*, supra, 228 Ga. App. at 126. Compare *Gatlin v. State*, 199 Ga. App. 500 (405 SE2d 118) (1991) (gun not mentioned or revealed by defendant until *after* money was taken).

The dissent relies on the following statement in *Oliver v. State*, 232 Ga. App. 816 (503 SE2d 28) (1998), to support its position that insufficient evidence of use was presented: "The element of 'use' is present when the victim is aware of the weapon and it has the desired forceful effect of assisting to accomplish the robbery." (Citation and footnote omitted.) Id. at 817 (1). The case cited for support of this statement in *Oliver*, however, states the rule differently. See *Maddox v. State*, 174 Ga. App. 728 (330 SE2d 911) (1985).

In *Maddox*, the victim eluded the armed defendant before being seen and was not present at the time of the taking from his store. The defendants argued that "the shotgun was never pointed directly at [the victim] and that, since he escaped from the premises before the shotgun could be used as an offensive weapon in the actual taking, no armed robbery occurred." Id. at 729. We rejected this argument, finding that "[t]here can be little doubt, and [the victim]'s testimony at trial confirms, that merely seeing a shotgun being carried into a place of business has an intimidating effect on the proprietor. The weapon had the desired forceful effect on [the victim] in the commission of a theft from his business." Id. at 730.

Therefore, even though the victim was not present at the time of the taking, a taking by use of an offensive weapon occurred. This comports with the well-established rule that the use of a weapon before or contemporaneous to a taking "satisfies the statutory requirement that the taking be by use of an offensive weapon." *Ramey v. State*, supra, 206 Ga. App. at 309.

The facts at issue in *Oliver*, supra, also fall within the scope of this rule because the victim observed the defendant holding a knife *after* she dropped her purse, but *before* the defendant took her purse from the ground. Id. at 816-817.

The dissent interprets *Oliver*, supra, as requiring some kind of subjective capitulation to the taking by a victim as a result of the

presence of a gun in order to satisfy the "by use" element of OCGA § 16-8-41 (a). This interpretation conflicts with our existing case law. In *Rogers v. State*, 255 Ga. App. 416, 418 (1) (b) (565 SE2d 583) (2002), the defendant and his accomplices approached the victim, who was carrying a money bag, while one of them fired his gun and ordered the victim to give them whatever he had. When the victim ran away with the money bag, the defendant fired his gun at him, and an accomplice chased the victim and grabbed the money bag. We found that sufficient evidence supported the defendant's conviction of armed robbery by use of an offensive weapon, even though the victim ran away and did not hand over the money or capitulate in any way. Similarly, in *Hambrick v. State*, 174 Ga. App. 444, 446 (1) (330 SE2d 383) (1985), we held that "[s]natching property while using an offensive weapon can constitute armed robbery rather than robbery by sudden snatching. [Cit.]" See also *Geter v. State*, 226 Ga. 236, 239-240 (4) (173 SE2d 680) (1970).

The dissent's interpretation of "by use" would make it impossible to prove armed robbery in any case in which a victim refuses to comply with an armed robber's demand or attempts to escape before the robber ultimately takes by force. This is not and should not be the law.

Based on the above, we find that sufficient evidence supports Fluellen's armed robbery conviction under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Andrews, P. J., Johnson, P. J., Phipps and Bernes, JJ., concur. Barnes, C. J., and Ruffin, J., dissent.*

RUFFIN, Judge, dissenting.

Although I agree with the majority that Fluellen is guilty of some form of robbery, under the indictment alleged and the facts proven, I cannot agree that he is guilty of armed robbery.

The salient facts are as follows. After Creegan was robbed of his money bag by an unidentified individual, Fluellen demanded that Creegan give him the food.[4] Creegan refused. At that point, Fluellen informed Creegan that he had a gun, and he reached under his t-shirt. Although Creegan could see Fluellen's hand bulging under the t-shirt, Creegan admitted that he did not see the bulge of a weapon. Thus, Creegan turned and began walking toward his car without giving Fluellen the food. As Creegan was leaving, Fluellen snatched the bag of food from him, ripping the bag and causing the food to fall to the ground. Fluellen retrieved the food and left.

---

[4] Although the prior theft of the money bag might be considered part of the res gestae, it is irrelevant to the issue of Fluellen's guilt as he was not charged with armed robbery on this basis.

The indictment alleged that Fluellen committed the offense of armed robbery by "unlawfully then and there with intent to commit theft, . . . tak[ing] from the person of Brendan Creegan and immediate presence of Brendan Creegan, certain property . . . by the use of a handgun, an offensive weapon." "A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon."[5]

Here, however, no weapon was seen. Accordingly, Fluellen's conviction may not be sustained absent "some physical manifestation of a weapon or some evidence from which the presence of a weapon may be inferred."[6] The proper inquiry is whether Fluellen's acts created a reasonable apprehension on the part of Creegan that an offensive weapon was being used.[7] *A weapon is being "used" if "the victim is aware of the weapon and it has the desired forceful effect of assisting to accomplish the robbery."*[8]

In the case before us, Creegan's testimony that Fluellen claimed to have a gun and reached into his waistband provides some physical manifestation that a weapon was present.[9] However, there simply is *no evidence* that Creegan was apprehensive of any such weapon or even that he believed any such weapon existed. Significantly, the State elicited no testimony from Creegan that he was either apprehensive or fearful in any way.[10] And Creegan's actions provide no circumstantial evidence of such emotion as Creegan did not acquiesce to Fluellen's demand to hand over the food, and Creegan simply walked away.[11] Under these circumstances, I fail to see *any evidence* that Creegan experienced anything resembling "reasonable apprehension."

The majority cites *Lemming v. State*[12] for the proposition that lack of fear does not preclude a finding of reasonable apprehension. But I do not think *Lemming* alters the result here. In *Lemming*, the victim was approached by a man wielding a small knife. Although the victim claimed he was unafraid, we found that the victim could still

[5] OCGA § 16-8-41 (a).

[6] *Joyner v. State*, 278 Ga. App. 60 (1) (628 SE2d 186) (2006).

[7] Id. at 60-61.

[8] (Emphasis supplied.) *Oliver v. State*, 232 Ga. App. 816, 817 (1) (503 SE2d 28) (1998).

[9] See *Joyner*, supra at 61; *Forde v. State*, 277 Ga. App. 410, 412 (1) (626 SE2d 606) (2006).

[10] Although Creegan testified that he thought Fluellen's friends might "beat [him] up" if he did not provide the food, he never said anything regarding fear that a gun would be used.

[11] Compare *Joyner*, supra (victim testified she was frightened and believed that defendant had a gun); *Rutledge v. State*, 276 Ga. App. 580, 583 (623 SE2d 762) (2005) (victim acceded to robber's demand).

[12] 272 Ga. App. 122, 124 (1) (612 SE2d 495) (2005).

objectively appreciate the risk of harm given that he had seen the perpetrator wielding the knife. Here, Creegan never saw a weapon, thus he cannot have the same objective appreciation of injury as the victim did in *Lemming*. Furthermore, the victim in *Lemming* acted in a manner consistent with the presence of an offensive weapon as he armed himself with a broom in an attempt to defend another from the attacker. Creegan, on the other hand, merely turned and walked away.[13] Although Creegan was aware that Fluellen was following him, there simply is no evidence that Creegan was attempting to flee. In other words, there is nothing from which jurors could reasonably infer that Creegan was experiencing either objective appreciation of injury or subjective fear.

Moreover, I cannot find — based upon the evidence presented — that the alleged weapon was "used" in the commission of the crime as it did not have "the desired forceful effect of assisting to accomplish the robbery."[14] Again, upon being verbally threatened with an alleged gun, Creegan ignored Fluellen's demand to hand him the food and walked away. Shortly thereafter, Fluellen snatched the food away from Creegan. Under these circumstances, the alleged weapon was not actually a factor in the robbery.[15]

The majority cites *Ramey v. State*[16] for the proposition that the mere presence of a weapon before a taking "satisfies the statutory requirement that the taking be by use of an offensive weapon." But the majority's reading of *Ramey* is not text-true. Rather, its reading of *Ramey* is so broad that it eviscerates the "by use" requirement contained in OCGA § 16-8-41 (a). A full reading of the case shows that more than the mere presence of a weapon is required. Significantly, in *Ramey*, the perpetrator actually had a weapon — a knife — which he used to attack the victim; it was not the mere threat of weapon as is the case here.[17] Using the knife, Ramey bound the victim, sexually assaulted her, and stole her car. Although Ramey did not use the knife directly upon the victim when taking her car, we nonetheless found

---

[13] I find the majority's contention that this was evidence of apprehension to be unpersuasive. Again, the state elicited no testimony that Creegan believed a gun was present and there is no evidence that Creegan was walking either quickly, which might suggest flight, or particularly slowly, which might suggest he was wary. Rather, the evidence shows simply that Creegan turned and walked away. Given that the only item of value Creegan had was food that did not belong to him, it is unfathomable that he would risk any harm to himself to protect that item. Thus, the only conclusion I can draw from the evidence – or lack thereof – is that Creegan did not believe Fluellen had a weapon.

[14] *Oliver*, supra.

[15] See *Gatlin v. State*, 199 Ga. App. 500, 500-501 (1) (405 SE2d 118) (1991).

[16] 206 Ga. App. 308, 309 (425 SE2d 385) (1992).

[17] Similarly, in *Maddox v. State*, 174 Ga. App. 728 (330 SE2d 911) (1985), another case relied upon by the majority, it is undisputed that the perpetrator actually had a shotgun.

the knife was used "to apply constructive force to intimidate the victim." Thus, it was not the mere presence of the weapon, but its use to intimidate the victim and to accomplish the robbery that satisfied the "by use" element of armed robbery.[18] I fail to see how this element was established here.

If Creegan had taken *any* action consistent with the belief that a weapon was being used — either admitting subjective fear or attempting flight — then Fluellen's threat of a gun might have constituted armed robbery.[19] But under the unique facts of this case, there was simply nothing in Creegan's conduct to suggest that he found Fluellen's threat of a weapon to be credible. And I am aware of no case in any appellate court in this state in which we have upheld an armed robbery conviction where there was no weapon seen and no evidence — circumstantial or otherwise — from which a jury could conclude the victim experienced reasonable apprehension. Indeed, such conviction violates due process.[20] Accordingly, I dissent.

I am authorized to state that Chief Judge Barnes joins in this dissent.

DECIDED MARCH 28, 2007.

*Patricia M. Moon, James S. Purvis, Thomas O. Humphries, Jr.,* for appellant.

*Richard R. Read, District Attorney, Roberta A. Earnhardt, Assistant District Attorney,* for appellee.

---

[18] See id.

[19] If the State had charged Fluellen with armed robbery based upon the use of caustic oven cleaner to steal the money bag, he likely would have been guilty of armed robbery as a party to the crime.

[20] See *Thompson v. City of Louisville,* 362 U. S. 199, 206 (80 SC 624, 4 LE2d 654) (1960). See also *Jackson v. Virginia,* 443 U. S. 307, 315 (III) (A) (99 SC 2781, 61 LE2d 560) (1979) ("[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' ").