A08A0263. CRAY v. THE STATE.
(662 SE2d 365)

BARNES, Chief Judge.
Marlon Cray appeals his conviction for robbery by sudden snatching, contending that his trial counsel was ineffective for failing to file a motion to suppress. He also argues that the trial court erred in denying his motion in limine to exclude evidence of his out-of-court identification. For the reasons that follow, we affirm.

We view the evidence on appeal in the light most favorable to the verdict, and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. *Campbell v. State*, 278 Ga. 839, 840-841 (1) (607 SE2d 565) (2005).

We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict. Id.

Viewed in that light, the evidence at trial established that in November 2004, the victim was working at a convenience store when Cray entered the premises. Cray asked for a money order in a specific amount, and as the victim began to print it out, Cray went to the back of the store and returned to the counter. He asked the victim for a pack of cigarettes, then snatched the money order out of the victim's hand and went out the door to his car. A witness in the convenience store had been talking to the victim and saw Cray both when he first approached the counter and again when he returned and grabbed the money order.

The victim called the police, and a criminal investigator responded to the robbery call. The victim described the robber as a black male, twenty-eight to twenty-nine years old, five feet eight to nine inches, weighing 185 to 190 pounds, with short hair and clear glasses, wearing a brown shirt and a dark jacket with some kind of striping. The victim described the robber's car as a white "box" Chevrolet Caprice with shiny wheels and a black vinyl top. The investigator put out a be on the lookout (BOLO) on the man and car, then the store manager came in and pulled the store's videotapes for the investigator to review. The victim then finished his shift and went home.

A patrol officer heard the BOLO and saw a vehicle matching the description, a white Chevrolet with a black top and shiny wheels. He made a traffic stop, and the driver, Cray, pulled into the parking lot of an all-night laundromat. The officer called the criminal investigator, who came to the scene. The investigator thought Cray appeared to be the person he had seen on the videotape robbing the store, and the car appeared to be the car he had seen the robber leaving in on the videotape. The car also matched the victim's description. The victim came to the scene and identified Cray as the robber from 50 feet away. With the investigator's encouragement, the victim moved closer for a better look and again identified Cray as the man who had snatched the money order out of his hand. At trial, the victim once more identified Cray as the robber.

Cray gave the police permission to search his residence, where the officers found a jacket that looked like the jacket the robber was wearing in the video.

The witness who was talking to the victim when the robbery occurred also identified Cray in the courtroom as the robber. When asked how he recognized him, the witness said, "I was standing in that store when he snatched that money order, you know, me and [the victim] were in the store talking. . . . If he would come in there and rob the store, . . . he could have took [sic] me and [the victim] out.

. . . It scared me up for a minute." When asked again about his identification, the witness repeated that he had seen Cray snatch the money order, stating, "[w]hen he came by me that's when I looked down at the man because I thought the man was fixing to hit me or something."

Although Cray has not argued the evidence was insufficient, we conclude that the evidence as outlined above was sufficient for a rational trier of fact to find Cray guilty beyond a reasonable doubt of robbery by sudden snatching. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. Cray argues that his trial counsel was ineffective for failing to file a motion to suppress because the patrol officer had no articulable suspicion to stop him pursuant to such a generic car description. To prevail on this claim, Cray must show both that counsel's performance was deficient and that but for this deficiency the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To show that the outcome would have been different, Cray must "make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." *Richardson v. State*, 276 Ga. 548, 553 (3) (580 SE2d 224) (2003). Finally, this court will affirm a trial court's ruling on a claim of ineffective assistance of counsel unless it is clearly erroneous. *Williams v. State*, 273 Ga. App. 321, 322 (615 SE2d 160) (2005).

"Although an officer may conduct a brief investigative stop of a vehicle, such a stop must be justified by 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *Vansant v. State*, 264 Ga. 319, 320 (2) (443 SE2d 474) (1994). In considering the " 'elusive concept' " of sufficient cause to authorize a stop, a court must determine whether the officer had sufficient " 'particularized and objective' " information to suspect the detainee of criminal activity. Id. In *Vansant*, the only information the detaining officer had was that a suspected hit-and-run driver was in a white van. He had no particularized description of the vehicle, did not know which direction the vehicle was headed, and did not see the van driver commit any traffic violations while following it for half of a mile. Id. at 321. Our Supreme Court held that the lack of specific information led to an unreasonable governmental intrusion, and affirmed the trial court's grant of a motion to suppress. Id.

The vehicle description in this case was much more particularized than that in *Vansant*. It included the make and model of the car, its body color, its roof color, its large size, and a description of the wheels. The robbery occurred at 8:19 p.m., the victim described the suspect at 8:39 p.m., and the vehicle was stopped at 8:49 p.m., 30

minutes after the robbery. Additionally, Cray matched the victim's detailed description of the robber. The traffic officer first spotted Cray on a street connecting to the street where the robbery took place.

"Given the [vehicle's] description and proximity to the crime, the officer had a well-founded, objective basis for suspecting the occupant[ ] of the [vehicle was] the subject[ ] of the lookout." *Givens v. State*, 218 Ga. App. 415, 417 (1) (461 SE2d 579) (1995); see also *McNair v. State*, 267 Ga. App. 872, 874 (1) (600 SE2d 830) (2004). Because Cray failed to make a strong showing that a motion to suppress would have been successful, he has not demonstrated that his counsel was ineffective for failing to file such a motion.

2. Cray contends that the trial court erred in denying his motion in limine to exclude evidence of the victim's one-on-one showup identification made the night of the robbery.

> The courts have held that, although the conventional lineup viewing is normally the appropriate procedure, nevertheless, prompt, on-the-scene confrontations and identifications, though inherently suggestive because of the presentation of a single suspect, are permissible in aiding a speedy police investigation and that where possible doubts as to identification need to be resolved promptly, such on-the-spot identifications promote fairness by enhancing the accuracy and reliability of identification, thereby permitting expeditious release of innocent subjects. [Cit.]

*Bennefield v. Brown*, 228 Ga. 705, 706 (3) (187 SE2d 865) (1972). We scrutinize the showup to determine if it was " 'unnecessarily suggestive and conductive to irreparable mistaken identification.' " *Johnson v. State*, 209 Ga. App. 632, 633 (2) (434 SE2d 169) (1993). In determining if the situation presented a likelihood of misidentification, we consider: the witness's degree of attention and opportunity to view the criminal in action, the accuracy of the witness's previous description of the criminal, and the length of time between the crime and the confrontation. *Thomason v. State*, 268 Ga. 298, 303-304 (3) (486 SE2d 861) (1997).

In this case, the victim saw Cray clearly both times he approached the convenience store counter. Cray was close enough to the victim to grab the money order from his hand, and the victim gave the police a detailed description of Cray, including his age, height, weight, the length of his hair, and his glasses. The laundromat parking lot where the victim identified Cray was lit, and the laundromat was open. The identification took place within about two hours of the crime.

Considering these facts, the trial court did not err in concluding that the situation did not present a likelihood of misidentification.
*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED MAY 21, 2008.

*James D. Lamb*, for appellant.
*Louie C. Fraser, District Attorney, Peter F. Larsen, Lauren Shurling Finley, Assistant District Attorneys*, for appellee.