## A09A0094. CRAWFORD v. THE STATE.
(676 SE2d 843)

JOHNSON, Presiding Judge.

A jury found Thomas Crawford guilty of kidnapping and two counts of armed robbery. Crawford appeals, challenging the suffi-

188

ciency of the evidence. He also argues that the trial court erred in admitting identification testimony and that he received ineffective assistance of counsel at trial. For reasons that follow, we affirm Crawford's convictions for armed robbery, but reverse his kidnapping conviction.

1. In reviewing Crawford's sufficiency challenge, we construe the evidence favorably to support the jury's verdict, and Crawford no longer enjoys a presumption of innocence.[1] We do not weigh the evidence or resolve issues of witness credibility, but merely determine whether the jury was authorized to find Crawford guilty of the crimes charged beyond a reasonable doubt.[2]

So viewed, the evidence shows that the victim was employed as a cook at a restaurant, and she typically worked alone in the restaurant in the morning, preparing for the day. At approximately 9:00 a.m. on January 7, 2005, the victim walked into the restaurant's oven room and was grabbed from behind by a man who demanded money. The man threatened her with a knife and patted the side of his pants, stating that he also had a gun.

The man released his grip on her, and she turned toward him, looking directly at his face for one to two minutes. He directed her to the restaurant's cash register in another room, and she gave him approximately $40 from the till, including numerous $1 bills. The victim also handed over $4 of her own money. At the victim's request, the assailant took her back to the kitchen area so that she could turn off the stove in the kitchen. He then threatened her again, stating that he would have to hurt her because she did not give him enough money.

At that point, the victim ran from the robber and out of the restaurant. Once on the street, she was able to report the incident to police, describing the robber's height, race, and skin tone. She also described his clothing, noting that he was wearing dark sweat pants, a white t-shirt, and a blue skull cap.

The police responded quickly and found a knife at the scene. In a parking lot near the restaurant, officers also recovered a pair of latex gloves similar to those used in the restaurant. Based on the conduct of a police dog, officers believed that the robber had left through the restaurant's back door, in the direction of the parking lot where the gloves were found. A witness along that escape route reported seeing someone wearing green running from the restaurant's general location.

A short time later, an officer spotted Crawford behind a

[1] *Rayshad v. State*, 295 Ga. App. 29, 32 (1) (670 SE2d 849) (2008).
[2] Id.

wrought-iron fence at a nearby church. Suspicious, the officer approached and asked what he was doing. Crawford stated that he was waiting for the bus, but the bus stop was on the other side of the fence. Questioned further, he asserted that he was urinating behind the fence. The officer noticed that his shoes were untied, his blue trousers were unzipped, and his belt was unbuckled. She then realized that he was wearing green sweat pants underneath the blue trousers.

Believing that Crawford might be the robber, the officer called for backup, and the victim was brought to the church for a one-on-one showup. Although she noticed that Crawford had changed clothing, the victim looked closely at his face and identified him as the robber. She also identified Crawford at two pretrial hearings and at trial.

At the time of Crawford's arrest, police seized a large sum of cash — including 23 $1 bills — from him. He also had a nylon stocking cap in his pocket.

(a) *Armed Robbery.* The jury found Crawford guilty of two counts of armed robbery, concluding that he robbed the victim (1) using a knife and (2) using a gun.[3] The evidence supports these findings. The victim unequivocally identified Crawford as the robber. She testified that he used a knife during the robbery, and officers found a knife at the scene. Gesturing to his pants, Crawford also told the victim that he had a gun.

"A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon."[4] Even if the victim does not see the weapon or article, an armed robbery conviction may be sustained if "the defendant's acts created a reasonable apprehension on the part of the victim that an offensive weapon was being used."[5]

Crawford took money from the victim after threatening her with a knife. And his statement that he had a gun was direct evidence that he also possessed a firearm.[6] Given this statement, as well as Crawford's conduct in gesturing to his pants, the jury was authorized to find a reasonable apprehension on the part of the victim that, in addition to the knife, Crawford was using a gun to rob her.

---

[3] The trial court merged these two counts for sentencing purposes.

[4] OCGA § 16-8-41 (a).

[5] (Citation and punctuation omitted.) *Fluellen v. State,* 284 Ga. App. 584, 585-586 (644 SE2d 486) (2007).

[6] Id. at 586.

190

The evidence, therefore, supports the armed robbery convictions.[7]

(b) *Kidnapping.* We are compelled, however, to reverse his kidnapping conviction. Kidnapping results when a person "abducts or steals away any person without lawful authority or warrant and holds such person against his will."[8] Traditionally, the element of abducting or stealing away the victim, also known as "asportation," has been established by proof of "movement of the victim, however slight."[9] Citing evidence that Crawford forced the victim to move around the restaurant, the state argued below that the evidence established kidnapping.

Recently, however, our Supreme Court altered the traditional interpretation of asportation. In *Garza v. State*, the Court rejected the "slight movement" standard and adopted a new test for determining whether movement constitutes asportation.[10] Under this test, four factors must be considered: (1) the movement's duration; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was inherently part of the separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.[11] As described by *Garza*,

> [a]ssessment of these factors will assist Georgia prosecutors and courts alike in determining whether the movement in question is in the nature of the evil the kidnapping statute was originally intended to address — i.e., movement serving to substantially isolate the victim from protection or rescue — or merely a criminologically insignificant circumstance attendant to some other crime.[12]

In this case, the victim's movement was brief, occurred during and incidental to the armed robbery, and did not enhance the risk she already faced during the robbery. Under *Garza*, therefore, the movement did not meet the asportation requirement, and Crawford's kidnapping conviction must be reversed for insufficient evidence.[13]

2. Crawford argues that the trial court erred in refusing to

---

[7] See OCGA § 16-8-41 (a); *Fluellen*, supra at 586-588.

[8] OCGA § 16-5-40 (a).

[9] (Citation and punctuation omitted.) *Garza v. State*, 284 Ga. 696, 697 (1) (670 SE2d 73) (2008).

[10] Id. at 701-702.

[11] Id. at 702.

[12] (Citation and punctuation omitted.) Id.

[13] See id. at 704 (3); *Rayshad*, supra at 33-34 (1) (b).

suppress the identification testimony stemming from his one-on-one showup with the victim. According to Crawford, the showup was inherently suggestive, unreliable, and should have been excluded. We disagree.

Although conventional lineups are generally preferred, "prompt, on-the-scene confrontations and identifications, though inherently suggestive because of the presentation of a single suspect, are permissible in aiding a speedy police investigation."[14] Unless a substantial likelihood of misidentification exists, evidence of a one-on-one showup is admissible.[15]

In considering the likelihood of misidentification, a court must consider four factors: (1) the witness' opportunity to view the criminal during the crime; (2) the witness' degree of attention; (3) the accuracy of any prior description given by the witness; and (4) the length of time between the crime and the showup confrontation.[16] The trial court acts as the factfinder in resolving the reliability issue, and we will uphold the court's ruling if any evidence supports it.[17]

We find no error here. During the robbery, the victim stood "face-to-face" with and eight to ten inches from the robber. She looked directly at his face, which was not covered, and also noted his clothing. According to the victim, she focused on the robber throughout the incident, testifying at trial: "I tried to look at his face and what he had on the whole time where I could identify him if I got away from him." The restaurant lights were on at the time, and natural light from the outside also illuminated the area. The victim expressed certainty about her identification during the showup, which took place approximately 30 minutes after the robbery. And although not perfect, her description of the robber was accurate in several respects.

Given the totality of these circumstances, the trial court did not err in concluding that the situation presented no substantial likelihood of misidentification.[18] Accordingly, it properly denied Crawford's motion to suppress.

3. Finally, Crawford contends that he received ineffective assistance of counsel because counsel failed to call his girlfriend as a witness at trial. To succeed in this claim, he must show that counsel's performance was deficient and that the deficiency prejudiced his

---

[14] (Punctuation omitted.) *Cray v. State*, 291 Ga. App. 609, 612 (2) (662 SE2d 365) (2008).

[15] *Fitzgerald v. State*, 279 Ga. App. 67, 68 (1) (630 SE2d 598) (2006).

[16] Id.

[17] Id.

[18] *Cray*, supra at 612-613 (2); *Fitzgerald*, supra at 69 (1).

defense.[19] Crawford, however, did not present this witness' testimony at the hearing on his motion for new trial. We thus do not know what she might have said in his defense, and he cannot demonstrate that any prejudice resulted from her absence at the trial.[20] Crawford's ineffective assistance claim, therefore, lacks merit.

*Judgment affirmed in part and reversed in part. Ellington and Mikell, JJ., concur.*

DECIDED MARCH 30, 2009.

*Barbara N. Lanier*, for appellant.
*Spencer Lawton, Jr., District Attorney, Isabel M. Pauley, Assistant District Attorney*, for appellee.

---

[19] *Jividen v. State*, 256 Ga. App. 642, 643 (1) (569 SE2d 589) (2002).
[20] See *Boatwright v. State*, 281 Ga. App. 560, 561 (2) (636 SE2d 719) (2006); *Jividen*, supra at 646-647 (1) (d).